[No. 4425.]

THE PEOPLE EX REL. ALEXANDER ET AL. V. THE
DISTRICT COURT OF THE TENTH JUDICIAL
DISTRICT, DIXON, JUDGE, ET AL.

1.  PROHIBITION—INJUNCTION—JURISDICTION—PLEADING.

Where a trial court is proceeding by injunction to restrain public officers from performing their official duties, and the public is directly interested, and it is apparent from the pleadings that the court has not jurisdiction to issue the injunction, the supreme court will issue a writ of prohibition to prevent the action of the lower court notwithstanding no objection to the jurisdiction was raised in the lower court. · And the filing of a motion to change the venue is not a waiver of the right to contest the jurisdiction.

2.  STATE BOARD OF ASSESSORS.

The state board of assessors as created by the revenue act of 1901 is a part of the executive branch of the state government.

3.  JURISDICTION—INJUNCTION.

The judicial department of the state government has no power by injunction to control the executive deparment in the exercise of its official functions of a governmental and executive nature.

4.  INJUNCTION—JURISDICTION— BOARD OF ASSESSORS — CONSTITU-
TIONAL LAW.

The courts have no jurisdiction by injunction to restrain the state board of assessors from proceeding with their duties as prescribed by statute because of the alleged unconstitutionality of the law under which the board is proceeding to act.

5.  SAME.

The fact that the same district court and judge had in a former proceeding declared a law unconstitutional cannot confer jurisdiction on the court to restrain by injunction the state board of assessors from proceeding to exercise their prescribed official duties under such law.

6.  SAME—PLEADING.

In an action to restrain the state board of assessors from proceeding under the statute to value the property of certain classes of corporations and to apportion such valuation amongst the various counties of the state in which such property is located, a complaint which alleges that if the board be permitted to proceed it would cause great expense and irreparable damage to complainants for which they would have no adequate remedy at law, and would cast a cloud upon their titles and would result in a multiplicity of suits, does not allege facts sufficient to

give the court jurisdiction to issue the writ of injunction to restrain said board.

## On Proceedings for Contempt.

CONTEMPT—PROHIBITION—INJUNCTION—ABUSE OF PROCESS.

The state board of assessors were restrained by temporary injunction from proceeding under the revenue act of 1901 to assess the property of railroad companies and certain other corporations, and applied to the supreme court for a writ of prohibition to prevent the lower court from enforcing the injunction and from proceeding further in the cause. A rule to show cause was entered in the supreme court, and the district court was prohibited from taking any further action pending the hearing of the application. After the issuance of the rule to show cause and before the application was heard in the supreme court, the board of assessors under the advice of the attorney general proceeded to complete the assessment of the property and apportioned the value amongst the various counties of the state in which such property was located and made return thereof to the counties as directed by the statute. *Held*, That members of the board of assessors participating in such assessment and the attorney general were guilty of contempt of the supreme court and their assessment and return thereof were illegal and void, notwithstanding the lower court was without jurisdiction to issue the writ of injunction.—Mr. JUSTICE STEELE dissenting.

## Original Proceeding.

An original proceeding was commenced in this court on September 25, 1901, by the filing of a petition by the attorney general, representing the State Board of Assessors, asking for an alternative writ of prohibition directed to the district court of Pueblo county and to N. Walter Dixon, the judge thereof. Upon hearing, the alternative writ was issued, returnable October 7, 1901. In the petition is contained the record of the proceedings had in the district court of Pueblo county in an action began on the 26th of August, 1901, wherein the persons who constitute the state board of assessors and the secretary thereof were made defendants and certain railroad, telegraph, and telephone companies, cor-

porations, were the plaintiffs. This complaint alleges, among other things, that a judgment was rendered in the said district court of Pueblo county by which judgment the act of the legislature entitled, "An act concerning revenue," passed in the year 1901, was declared null and void because unconstitutional, and that the said judgment has in no manner been declared invalid and is still in full force and effect. Then follows a statement containing various sections of the said revenue act, and it is alleged that the meetings of the state board of assessors, held at Denver, and all the acts and doings of said board were illegal, null, and void, for the reason that the said act was never legally passed by the legislature, and because the said legislature exceeded its powers in attempting to make and provide for the election and selection of the thirteen persons who now claim to be the state board of assessors as the board of assessors. It further alleges, "And if the said board is allowed to continue in the performance of their duty as prescribed by the said revenue act, as they are now threatening to do, great and irreparable damage will be caused to these plaintiffs, and they will be obliged to incur and pay, in order to obtain their just rights and remedies in the premises, great sums as costs and damages, and that a suit at law to recover the same will be wholly inadequate," and sets forth the reasons why a suit at law will be inadequate,—among others, that the alleged illegal acts of the assessors will result in in a great multiplicity of suits and involve both plaintiffs and defendants in an immense amount of costly, vexatious and long-continued litigation; and that the acts of the said board of assessors will result in casting a cloud upon the title to their property. It further alleges

that great injury will result if notice be given, because, they fear that the acts sought to be enjoined will be performed by said defendants; and pray for a temporary writ of injunction restraining. the defendants from further proceeding with their duties under the said revenue act, and that upon hearing the said injunction be made perpetual. On the same day a temporary writ of injunction was issued, as prayed for. On the 10th day of September a motion for change of venue was filed by the attorney general in behalf of said defendants, on the grounds, generally, that said defendants were public officers, that their duties were to be performed at the capitol, and that the cause of action mentioned in the complaint arose in the county of Arapahoe and not in the county of Pueblo.

The petition in this court further alleges that the motion for change of venue was, after various continuances, heard by the said judge on the 21st of Sept., 1901, and that upon said day the said district judge refused to inform the attorney general when a decision would be rendered on said motion, and that he thereupon adjourned court for the period of one week. They further allege in the petition that they, the petitioners except A. B. Gray, constitute a board known as the State Board of Assessors; that the said A. B. Gray is the secretary thereof; and that all the alleged wrongs complained of concerning which injunctive relief was sought, relate wholly and entirely to their official duties as such state board of assessors and its secretary. It is further alleged that the said judge, on or about the 5th day of August, 1901, rendered final judgment in a certain cause then pending in said court wherein he made a certain writ of *mandamus* theretofore issued a permanent

one, and declared the said revenue act to be unconstitutional because not passed by the legislature in a constitutional manner; and that subsequent thereto a *supersedeas* issued from this court staying all further proceedings in said cause. It is further alleged that by reason of the illegal retention of said cause by the said judge, and the issuance of said writ of injunction, the petitioners are restrained and enjoined from performing their duties as state officers, and that not only the state officers but the county officers as well who are charged with the duty of collecting the revenues of the state, will be so hampered in their work that they will be unable to perform their duties, because they will have no basis upon which to make tax levies; "and that it is against public policy to have said officers restrained from the execution of their duties at the suit of companies and individuals that have a complete and adequate remedy at law."

The respondent in his answer, filed on October 3, alleges that the writ of prohibition can be employed to restrain the action of an inferior court only when such inferior court proceeds or threatens to act without jurisdiction or in excess of its rightful jurisdiction; that said relators never at any time presented to said district court any question as to its jurisdiction, either on demurrer to the complaint or by motion to dissolve the restraining order made therein; that the only question ever presented by relators to the court was upon the motion for change of place of trial; that since the writ of prohibition was issued, the relators have assembled and threatened to violate the restraining order issued by said district court, and to do and perform the acts which therein they are commanded not to do or perform, believing, or pretending to believe, that said *prohibition* operated as a

supersedeas to the said restraining order. He denies that he withheld his decision upon the motion for a change of venue, but avers that he took said motion under advisiment for the reason that he was not satisfied how the same should be determined, and he felt it was his duty to fully investigate the questions presented and to give due consideration "to the arguments of counsel whose utterances upon any question, and upon any occasion, are worthy of the highest consideration by any court." And further, that on the 23d of September he forthwith began the investigation and consideration of the questions involved in said motion, and prosecuted the same with dilligence until he arrived at a conclusion satisfactory to himself, and that his decision upon said motion would have been rendered long since had it not been for the writ of prohibition issued out of this court. Respondent further says that he has no interest whatever, direct or indirect, proximate or remote, in the litigation pending in said district court, nor in the outcome of said litigation, nor has he any desire or preference as to the outcome of said litigation other than that justice be done according to law.

The statute under consideration in this case is, in part, as follows: "Sec. 111. On or before the fifteenth day of September in each year the board shall transmit to the county clerk of each county through which the track of any railway company, or telegraph wire or telephone wire of any telegraph or telephone company may extend, a statement showing the length of the main track of such railway and the number of miles of such telegraph and telephone wire in such county, and the assessed value per mile of the same, as fixed by a ratable distribution of

the assessed value of the whole property of such corporation, among the different counties of the state. As also a statement showing the amount to be assessed in such county, against each express company, fast freight company and each firm and individual operating any of such cars as hereinbefore mentioned." * * *    Sess. Laws 1901, p. 299.

Mr. C. C. POST, attorney general, Mr. CÆSAR A. ROBERTS, and Mr. GEORGE M. POST, assistants attorney general, and Messrs. MORRISON & DE SOTO, for petitioners.

Mr. CHAS. E. GAST, Mr. HENRY A. DUBBS, Mr. D. C. BEAMAN, Mr. A. E. PATTISON, Mr. T. H. DEVINE, Mr. H. G. LUNT, Mr. H. M. BLACKMER, Mr. HENRY T. ROGERS, Mr. WILLARD TELLER, Mr. E. E. WHITTED, and Mr. CHAS. W. WATERMAN, for respondents.

Mr. JUSTICE STEELE delivered the opinion of the court.

We are met at the very threshold by the argument that the judge of the district court not having had an opportunity to determine the questions presented in the petition for prohibition, because no plea to the jurisdiction was interposed and because the motion for change of venue has not been decided by him, proper respect for the district court requires that the writ of prohibition should not issue until the judge has had an opportunity to determine, in the first instance, the question of jurisdiction.   Ordinarily this argument is sound, and in cases involving only private rights, we think we should, in the exercise of a judicial discretion, refuse the writ under such circumstances.   The great weight of authority is, how-

ever, that if a want of jurisdiction is apparent on the face of the pleadings in the lower court, no preliminary objection is necessary before suing out the writ of prohibition.  High on Extraordinary Legal Remedies, § 774; *Havemeyer v. Superior Court*, 54 Cal 405; *State v. White*, 40 Fla. 297; *Swinburn v. Smith*, 15 W. Va. 483; *State v. Aloe*, 152 Mo. 471; *Farquharson v. Morgan*, Q. B. D. 1894, Vol. 1, 552.

In the last case above, Lord Halsbury said: "It has been long settled that, where an objection to the jurisdiction of an inferior court appears on the face of the proceedings, it is immaterial by what means and by whom the court is informed of such objection. The court must protect the prerogative of the crown and the due course of the administration of justice by prohibiting the inferior court from proceeding in matters as to which it is apparent that it has no jurisdiction. The objection to the jurisdiction does not in such a case depend on some matter of fact as to which the inferior court may have been deceived or misled, or which it may have unconsciously neglected to observe, and the judge of such court, therefore, must or ought to have known that he was acting beyond his jurisdiction. I find no authority justifying the withholding of a writ of prohibition in such a case."

The injunction in this case prohibits the regular proceedings of a state board organized to value and apportion certain classes of property for the purposes of taxation, and directed by statute to do this at a certain time; so that fair and uniform taxes may be levied throughout the state. Upon the making and certification of these assessments in such time that the several county assessors can complete their assessment rolls and make abstracts thereof to be

submitted to the state board of equalization and passed upon during the time that board is required by law to sit, depend, perhaps, the validity of the assessment of all the property within the state for taxation. Certainly there can be no fair and just taxation if the property to be assessed by the state board of assessors is excluded.

The filing of the motion for a change of venue is not a waiver of the right to contest the jurisdiction of the district court; for, as is well said in one of the cases cited, "A public law is not the property of any man, and cannot be confessed away." *State v. Aloe,* 152 Mo. 471.

The writ of prohibition is asked for by the petitioners mainly on the ground that the judge of the district court has failed for an unreasonable time to pass upon the motion for change of venue. If there were no other reasons apparent to us for granting the writ, we should refuse it. But the petitioners say in their petition that the district court has not jurisdiction to grant the injunction, because they are public officers of the state and the acts which they are enjoined from performing are acts required of them by the statutes of the state, and that it is against public policy to enjoin the performance of public duties by public officers. The court, however, is not limited to the reasons assigned in the petition, but should examine the whole record. It becomes necessary, therefore, in order to determine whether or not the district court of Pueblo county had jurisdiction to issue the writ of injunction, to consider the petition filed in the district court upon which the injunction was issued. The petition recites that the petitioners own the railroads and the telegraph and telephone properties within the various counties of

the state.  That the persons named as respondents are about to assemble at the capitol, in Denver, and there assess such properties and certify their asssessment to the various counties of the state.  That the law under which the said persóns claim to act was not only improperly passed by the legislature, but that the legislature exceeded its powers in attempting to provide for the election and selection of the state board of assessors.  It is alleged in the petition that a multiplicity of suits will result unless the said persons constituting the state board of assessors, and the secretary thereof, are enjoined and restrained from making the assessments and certifying the same to the various counties of the state; that if notice be given of the application, it is feared that the acts sought to be restrained will be done and performed by the said defendants; that there is no plain, speedy and adequate remedy at law, and therefore they pray that a temporary injunction issue against the said state board of assessors and that upon hearing of said cause the said injunction be made perpetual.  Thus it appears that the whole scope and purpose of the proceeding in the district court was to perpetually enjoin the state board of assessors from valuing this property for the purposes of taxation, upon the ground that the law under which the said board of assessors were about to proceed is unconstitutional and void.  This court held, in the case of *Frost v. Thomas*, 26 Colo. 222, that the courts cannot directly interfere with the discharge of the duties of the governor of the state and restrain him from executing the law, merely because it is alleged that the act is unconstitutional; and the court says: "True, neither department can operate in all respects independently of the other, because each, within its own

proper sphere, may impose a restraint upon the remainder; but neither can assume, directly, a superior authority over another, as each, in the exercise of their respective powers, stand on a constitutional equality; and if the judicial department of the state should attempt, in a proceeding of this character, to compel the chief executive to refrain from the performance of his duties, under the act creating the new county, it would be an usurpation of authority which alone devolves upon the executive branch of the state government to exercise."

Article IV, Sec. 1 of the constitution is as follows: "The executive department shall consist of a governor, lieutenant-governor, secretary of state, auditor of state, state treasurer, attorney-general, and superintendent of public instruction  *   *   *."

. It will be conceded that the state board of assessors is not part of the executive department as defined by the constitution, but it cannot be seriously contended that it is not part of the executive branch of the state government, in the comprehensive sense in which *executive* is used when government is divided into three distinct branches. It was conceded in argument that the judicial department should not interfere by injunction with the governor, who is the head of the executive department, but it was contended that the state board of assessors is not part of the executive department within the meaning of our constitution, and that the section of our constitution which provides for non-interference by one department with another does not apply to the case at bar. Under the law of 1901 the duties of the state board of assessors are defined, and it is a most important part of the machinery of the state for the assessment of property. In the comprehensive

sense of the term, the state board of assessors is a part of the executive branch of the government, because it is not part of the judiciary, which construes the laws, nor a part of the legislative department, which makes the laws, and because it is charged with the detail of carrying the laws into effect and securing their due observance.

In the case of *Walton v. Develing*, 61 Ill. 201, the court says: "Where the law authorizes an election to be called in a township to determine whether a majority are in favor of subscribing to the stock of a railroad company, and the election is called in pursuance to the requirements of the law, a court of equity has no power to restrain the officers from holding, or the people from voting at, such election. A writ of injunction issued in such a case is void, and the officers and people are not bound to obey it, as the court has no jurisdiction to issue the writ." The court cites, with approval, this language: "I am most unwilling to lay down any rule which should limit the power and discretion of the court as to the particular cases in which a special injunction should or should not be granted; but I have always felt,—and since I have been upon the bench I have seen no reason to alter my opinion—that extreme danger attends the exercise of this part of the jurisdiction of the court, and that it is a jurisdiction to be exercised with extreme caution. It is absolutely necessary that the power should exist because there are cases in which it is indispensable; but I believe that, practically, it does as much injustice as it promotes justice, and it is, therefore, to be exercised with great caution."

It is said in Throop on Public Officers, § 842, "That the question has been made how far a court

of equity has jurisdiction to interfere in cases of public functionaries who are exercising special public trusts or functions.  As to this the established doctrine now is that so far as those functionaries strictly confine themselves within the exercise of those duties which are confided to them by law the court will not interfere."  And in High on Injunctions, § 1326, it is said: "And in general it may be said that the courts will not interfere by injunction to restrain officers of a state from compliance with a law of the state requiring the performance of a public duty at their hands.  They will not, therefore, enjoin such officers from receiving bids for a public loan and issuing stock therefor, when such duty is imposed upon them by law, even though the law under which they are acting is alleged to be unconstitutional."

Authorities cited by the respondents to the effect that an injunction will lie to restrain the performance of a public duty under a statute which has been declared unconstitutional cannot have weight with us, because, while the law was held unconstitutional by the judge of the district court, that judgment has been suspended for all purposes by the supersedeas of this court.

Therefore, we think that it is not within the jurisdiction of the district court to enjoin the state board of assessors from proceeding with their duties as prescribed by the statute.

We are of opinion also that the acts to be performed by the board were not such as may be enjoined, and that the complaint presented to the district court does not state facts requisite to give a court of equity jurisdiction to interfere by injunction.

The cases of *Milwaukee v. Koeffler*, 116 U. S. 219;

*Cruickshank v. Bidwell,* 176 U. S. 73; *Van Cott v. Supervisors,* 18 Wis. 259; *Insurance Co. v. Bonner,* 24 Colo. 220; *Highlands v. Johnson,* 24 Colo. 371, sustain the position that injunctions to restrain the collection of public revenues are not favored, and that such remedy is not available, because there is a complete remedy at law, and that the mere fact that the law under which the tax is levied is unconstitutional is not in itself sufficient to justify the granting of the writ, but in addition thereto a case must be made under some well recognized head of equity jurisprudence.  If injunction cannot be used to restrain the collection of a tax "because of the mischief which must attend the exercise of the right to contest in the courts of equity every tax which is asserted to be illegal or unauthorized," what shall be said of an injunction, which as in this case, prohibits the assessment of nearly one-half of the taxable property of the state, exempts the railroad, telegraph and telephone companies from the payment of any tax and places upon the rest of the taxable property of the state the entire burden of sustaining the government.

Mr. Justice Field, in the case of *Dows v. Chicago,* 11 Wallace, 108, says:  "Assuming the tax to be illegal and void, we do not think any ground is presented by the bill justifying the interposition of a court of equity to enjoin its collection.  The illegality of the tax and the threatened sale of the shares for its payment constitute of themselves alone no ground for such interposition.  There must be some special circumstances attending a threatened injury of this kind, distinguishing it from a common trespass, and bringing the case under some recognized head of equity jurisprudence before the pre-

ventive remedy of injunction can be invoked. It is upon taxation that the several states chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible. Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public. No court of equity will, therefore, allow its injunction to issue to restrain their action, except where it be necessary to protect the rights of the citizen whose property is taxed, and he has no adequate remedy by the ordinary processes of the law. It must appear that the enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injury, or where the property is real estate, throw a cloud upon the title of complainant, before the aid of a court of equity can be invoked. In the cases where equity has interfered, in the absence of these circumstances, it will be found, upon examination, that the question of jurisdiction was not raised, or was waived."

In *Wells v. City of Buffalo*, 80 N. Y., 253, an action to set aside an assessment, as a cloud on title, on the ground that the act under which the assessment was laid was unconstitutional, the court, by Rapallo, J., say; "The sole ground upon which the assessment is sought to be set aside being that the act authorizing it is unconstitutional, this action cannot be maintained. If the act is unconstitutional no assessment imposed under it can be a cloud upon the plaintiff's title. It is void upon its face. If the act is constitutional the assessment is valid. In either case, there-

fore, the complaint was properly dismissed. The judgment should be affirmed, with costs."

In the case of *State v. Aloe* 152 Mo. 471, the court says: "The returns of the Judge and the plaintiffs in that suit are to the effect that the circuit court is a court of general jurisdiction in law and equity, having jurisdiction in that kind of cases with power to issue injunctions and that the act of 1899 was unconstitutional, and therefore in the case made by the plaintiff's petition the court had authority to issue the injunction as it did, and in doing so did not transcend its jurisdiction. and for that reason, if the relators are aggrieved, they have a remedy by further proceedings in that court or by appeal on final judgment. * * * When the judiciary undertakes to pass judgment on an act of the legislature in the light of the constitution, it exercises the highest function of goverment known under our free institutions. In such case, parties and counsel may aid the court in its search for truth, both as to facts and law, but the responsibility for its findings and conclusions is upon the court alone. * * * When the validity of a statute is drawn in question, the court approaches the subject as one involving the gravest responsibility, and to be considered with the greatest caution. The general assembly is presumed to have been as careful to observe the requirements of the constitution in enacting the statute as the court in applying it. Every presumption is to be indulged in favor of the validity of the act, and that presumption is to continue until invalidilty is made to appear beyond a doubt. But in the case at bar these presumptions seem to have been reversed by the circuit judge, the statute held *prima facie* invalid, the will of the Legislature blocked before it could take effect, and the officers appointed

forbidden to put themselves in position where they could as officers defend it. * * * The real and only purpose of the suit in the circuit court was to bar the entrance to the office of board of election commissioners by injunction, and to obtain a decree of a chancery court declaring relators' title to the office invalid. That is a subject over which a chancery court has no jurisdiction. The courts of law are open to all persons who have rights of that nature which have been violated, and ample means are afforded in those courts for the vindication of such rights and the redress of their wongs. It is said in support of the injunction, that since no one was in possession of the office, there was no one against whom a writ of *quo warranto* could be directed. But the petition in that case stated that these relators were about to enter into the office and would do so if unrestrained, as soon as the act of the legialature should go into effect. Whilst the main virtue of an injunction is to anticipate and prevent a threatened wrong which if committed a court of law could not adequately redress, yet a court of chancery can not in excursions beyond its domain produce conditions to make jurisdiction for itself by forestalling events which would if left alone have no more injurious effect than to land the case in a court of law, whose process is equal to the emergency."

Many of the questions here presented are ably discussed in an opinion by Judge Wilson in *Wason v. Major*, 10 Colo. App. 181.

In this case the judge of the district court, in an *ex parte* proceeding, in a suit which had for its sole object an injunction against certain officers, granted a temporary writ of injunction restraining the board of assessors from performing certain duties which by

law they were required to perform.  He has, by so doing, prevented the board from performing one of the most important functions of the government of this state, namely, that of assessing the railroad, telegraph, and telephone properties, and certifying their assessment to the various counties of the state. An appeal from this order does not, as he correctly says in his return to the alternative writ, suspend the injunction, but the injunction remains in force until in ordinary course the judgment is reversed.  The revenue of the state will be diminished, and the end sought (the prevention of any assessment of the property of these companies) will be attained before the question can be finally determined.  The authorities which we have quoted convince us conclusively that it is not within the power of a court of equity thus to arrest the action of the state board of assessors and, as an initial step, to grant the relief which the petitioners seek.  The duties which these officers perform, as has been held by some authorities, are *quasi* judicial in their character.  They are vested with a discretion in many matters, and while some of their duties may be considered ministerial, their entire duty is judicial or executive; and it is, as we understand it, the almost universal rule in this country that such duties can not be restrained by injunction.

To meet the requirements of the law that the case must be made under some of the well-recognized heads of equity jurisprudence, in addition to alleging that the act is unconstitutional, the respondents alleged: That if the said board is allowed to go on and make the statements and ratable distribution and shall transmit the assessments and statements to the various county clerks and cause a tax to be

levied, such levy or tax based upon such assessment will cause great and irreparable damage to them, and will subject them to great cost and damages, and that a suit at law to recover of any or all of the defendants, or any or all of the counties in which the tax may be levied, would be wholly inadequate,— because the members of said board have no property with which to pay any judgment which might be recovered against them as damages; because if they had property, it would be necessary to bring suits in various counties, which would result in a great multiplicity of suits and costly and vexatious and long-continued litigation; because said levy would constitute a lien upon their property until discharged by payment or sale, that it would be a cloud upon their title, would embarrass them in business and impair and diminish the value of their property, from which they could only be relieved by the payment of the taxes or by long and vexatious litigation instituted and carried on by them; because suits cannot be maintained against the counties until the taxes are paid, and in case the taxes were declared void, to recover the money paid and for damages many suits would have to be brought; because the damages from the said illegal acts would be so great that the remedy at law would be wholly inadequate.

The plaintiffs say that suits brought against the state board of assessors and the various counties for damages would be vexatious; with this statement, inasmuch as it meets with our cordial indorsement, we will not take issue. By their own statement, suits against the members of the state board of assessors would be unavailing, and this court has held that actions against the counties for damages cannot be

sustained; therefore the only great number of suits to be brought, if the state board of assessors is per-mitted to perform its duties, are suits to recover the taxes paid. Unless we are to assume that the prop-erty of these corporations is exempt from taxation, no more litigation will result from an assessment by the state board of assessors under the act of 1901 than by an assessment in any other way. Under the law as it existed prior to 1901 these corporations would be compelled to bring suits in the various counties to recover money illegally exacted for taxes; and there is no reason apparent in the com-plaint for an injunction against the state board of as-sessors that does not apply with equal force to the revenue laws as they existed prior to 1901 except that the law of 1901 is alleged to be unconstitutional. The plaintiffs claim that great and irreparable dam-age will result if the state board of assessors is per-mitted to make the assessment and certify the result; the only damage shown in the complaint is that a different mode of assessment is prescribed by the law of 1901. If the state board of assessors has assessed the property of each corporation at its full cash value (as required by the law of 1901 as well as the prior laws), no irreparable damage will result to the plaintiffs because of the manner in which the assessment is made. But, they say, the acts of the assessors are illegal and will cast a cloud upon the title of their property; this is not true, even assum-ing that a tax levy casts a cloud, because these as-sessors do not make the levy; the levy is made by other officers, the board simply values the property for the purpose of taxation. No cloud is cast upon the property of these plaintiffs either by the asses-ment or by the levy, for this court has held that a cloud

is not cast upon the title to one's property until after a tax deed is issued and recorded. We are unable to see how these corporations will suffer irreparable damage because of the acts complained of; they must pay taxes, and must pay now, upon the full cash value of their propepty. The fact that a different board is to value their property cannot work irreparable injury to them. They are the creatures of the state, the state affords them protection, and they must bear their full share of the burdens of government. They may have some good reasons for preferring to have their property assessed by a board composed of a small number of persons rather than by a body of a larger number, but the reason does not appear in the pleadings. Assuming everything they allege as invoking the aid of equity to be true and established,—the multiplicity of suits to be avoided, the wholly inadequate remedy at law, the cloud upon their title, the irreparable damage,—overshadowing these reasons for granting the writ is the damage, the injury, the mischief, the wrong, the injustice, which must result to Colorado and to her people if the injunction is permitted to stand.

We are forced, therefore, to the conclusion that the judge of the district court had not jurisdiction of the subject-matter, namely, the issuance of an injunction to prohibit the state board of assessors from performing their duties, and that in granting the temporary writ of injunction he exercised an unwarranted interference with a board which is a part of the executive branch of the government of this state; and such act, being beyond his jurisdiction, is null and void.

The respondent says he has no interest, direct or indirect, proximate or remote, in the litigation, nor

has he any desire or preference as to the outcome other than that justice be done according to law; and that in all his acts he has been impelled solely by a desire to observe his oath of office and perform his duties. This we should have known and believed without his verification; and while our views are radically different in this case, we trust we shall have always, as we have now, great respect for the district court of Pueblo and for the judges thereof.

For the reasons given, the alternative writ of prohibition is made perpetual and the respondent court is directed to dismiss the cause.

Mr. JUSTICE GABBERT concurring specially in the main prohibition proceeding:

I fully concur with the conclusion announced by my brother Steele, that the district court of Pueblo county is without jurisdiction to entertain the action commenced in that tribunal by the parties who seek to enjoin the state board of assessors from exercising the functions imposed upon it by law; but in my opinion, the discussion of the case has taken a much wider range than necessary for a decision of the vital question.involved; hence, upon propositions discussed which in my judgment are not material, I express no opinion, and base my conclusions only upon such as I shall mention.

The revenue law enacted by the late general assembly creates a state board of assessors—Sec. 88. The duty of this board is to assess, for the purposes of taxation, railway, telegraph and telephone property—Secs. 88a, 96. This board is also directed to determine the assessed valuation of such property in each of the counties in which any part thereof is sit-

uate, and certify its action in this respect to the various counties entitled to levy taxes upon this class of property—Sec. 111. The board of assessors was proceeding to comply with this law when corporations owning property affected by such action commenced a suit in the district court of Pueblo county, and obtained a temporary injunction restraining the board from further acting. The grounds upon which the plaintiffs in that action rely are (1) that the law above referred to, under which the state board of assessors was acting, or about to act, was unconstitutional; (2) that unless they were permitted to maintain their action, they will be compelled to commence a great number of suits in order to protect their rights; and (3) that in another action, before the same court and judge, the revenue law had been declared unconstitutional. Thereupon the board commenced proceedings in this court to test the jurisdiction of the district court in that action. This preliminary statement, in my opinion, presents the only question on the merits for this court to determine, viz., whether or not the district court of Pueblo county had jurisdiction to entertain the action to prohibit the further prosecution of which these proceedings were instituted in this court.

The solution of this proposition depends primarily upon an answer to this question: Can the judicial directly prohibit the executive department from executing laws governmental in their nature? When the question arises whether one department is encroaching upon the authority of another, the courts must become the final arbiters. When this question is between the judicial and either of the other departments, the judiciary must be just as careful in marking the line between their authority and either

of the others as if the contest was one of power and authority between the other departments. By the constitution of the state our government is divided into three co-ordinate branches—legislative, executive and judicial. The constitution is the paramount law. Each department derives its authority from that source. The power of each is limited and defined. Each is clothed with specific powers. The result of this distribution of power is, that each stands on an equal plane; neither is superior to the other, and each acting within its proper sphere is supreme. Hence, neither can directly call the other to account for actions within its province, nor can one directly interfere with the other in the performance of functions delegated by the constitution. Any other rule would be an assumption that the authority of one was superior to the other, or that the departments were not of equal dignity. *Frost v. Thomas*, 26 Colo. 222; *People v. Rucker*, 5 Colo. 455; *In re Fire and Excise Comrs.*, 19 Colo. 482; *Guebelle v. Epley*, 1 Colo. App. 199; *People v. Martin*, 19 Colo. 565; *Lewis v. Water Works Co.*, 19 Colo. 236; *Sutherland v. Governor*, 29 Mich. 320.

To this doctrine each department must yield implicit obedience; otherwise, the constitutional authority of the respective branches of the government would be obliterated, and we would be confronted with the antagonisms and complications resulting from one department assuming to directly control the other with respect to acts within its province. It is only by a rigid adherence to these principles that the powers of each can be fully protected, or prevented from being assumed by, or concentrated in, one, and each limited to the legitimate functions which the people, by the constitution, have entrusted

to the different departments of government. The duty of the executive department is to carry the laws into effect. In a legal sense this department is not limited to those officials which the constitution designates as constituting that branch of government. It embraces all the organs of government upon which devolve the duty of executing laws of a governmental nature, and in the performance of which a discretion is involved as distinguished from official duties, which, in law, are termed ministerial. By virtue of the authority of the constitution, it is the duty of the state board to carry into effect the provisions of the revenue law which it is required to execute. They are of a govermental character. The sole object of the action commenced in the district court is to obtain an injunction to restrain the board from performing its duties. If this should be permitted in a direct proceeding, the result would be to directly subject executive officials to the jurisdiction of the courts when acting within their province, and strip them of their constitutional powers. This is an authority which the judicial department cannot exercise in this manner, for the obvious reason that to concede it would be an assumption that the judicial was of superior authority to the executive department. That the revenue law is claimed to be unconstitutional·cannot modify the rule in this instance. The courts cannot investigate the question· of its validity in a proceeding which can only be maintained upon the theory that the judicial is of higher rank than the executive department, or may directly control the functions of that branch of the government when acting within its sphere. Jurisdiction is the power to hear and determine the particular questions in the case involved. If this power is

absent, then the court is without jurisdiction. The case presented to the district court calls for an exercise of authority upon its part over another branch of the state government, which it does not possess. It is, therefore, not within its power to hear and determine that case. In a proper action the validity of the law may be raised, but not in one which would result in the courts assuming an authority which does not exist; in fact, under our form of government, is impliedly prohibited by the constitution. It might be that if a law was declared unconstitutional by a tribunal which the district court was bound to obey, the situation would be changed. Upon that proposition I express no opinion, because that condition does not exist. District courts are courts of co-ordinate jurisdiction. Neither can review the proceedings of another, nor is one bound to follow the law as announced by another. The fact that the same court and judge, in another proceeding, may have declared the law unconstitutional, cannot confer jurisdiction to entertain the action in question, when the declaration that the law is unconstitutional is not by a court which the district court of Pueblo county is bound to follow.

The fact that the corporations may be compelled to bring a great number of actions in order to test the question which they have raised in the district court of Pueblo county, cannot avail in this proceeding. Courts of equity do sometimes grant relief to prevent a multiplicity of suits, but only in cases over which they have jurisdiction.

It was urged upon our attention in the argument that the petitioners not having challenged the jurisdiction of the district court (except upon the ground of venue), and not having given that tribunal an op

portunity to determine its authority to entertain the action, independent of the question of venue, cannot raise the main proposition of jurisdiction for the first time here. The people of the state, by constitutional provision, have vested this court with the authority to issue extraordinary remedial writs. One object of this was to provide a remedy whereby questions *publici juris* could be speedily determined by the highest court of the commonwealth. The writ of prohibition is not one of right, but may issue in extraordinary cases in the exercise of a sound discretion we must be governed by the exigencies of each particular case. There is certainly one presented by the petitioners in this instance which is of the utmost importance. They are acting on behalf of the people; the latter are vitally interested in th‗ main question which we are asked to determine. The plaintiffs in the action commenced in the district court are striking at the very foundations of the government of the state by preventing its officials, charged with executing the laws relating to revenue, from acting; so that, whatever may be the weight of authority on the proposition as to whether or not a party can invoke the jurisdiction of this court by proceedings in prohibition when the inferior court whose jurisdiction is challenged has not been permitted to determine the question, is not controlling, where the people are directly interested, as in this instance, in the question of the jurisdiction of the district court to restrain the state board from performing its duties.

*Original proceedings in contempt, and to set aside and declare null and void certain acts of the State Board of Assessors.*

Subsequent to the proceedings set forth in this case

at page 183, *supra*, and on, to-wit, the 2d of October, the plaintiffs in the injunction suit presented to this court a petition and affidavits alleging that the state board of assessors were proceeding, in violation of the injunction, to assess the property of the plaintiffs, and asking that the state board of assessors and the attorney general be cited to answer for a contempt for having so proceeded, and for an order restraining them from certifying their assessments, and for an interpretation by this court of the effect of the granting of the writ of prohibition as to whether it superseded the injunction. On the 3d day of October the court, in an oral opinion by the Honorable W. H. Gabbert, the presiding judge, refused to cite the board as for contempt, upon the showing made, and refused to make any order restraining the board from further proceeding, or from certifying the assessments, but informed the members of the board and the attorney general that in the opinion of the court the granting of the alternative writ of prohibition did not have the effect of superseding the injunction, and that if the board should certify the assessments, pending the final hearing and determination of the writ of prohibition, the members of the board would perhaps be in contempt of this court, even though the injunction itself were invalid. Afterward the petition was renewed, with the additional statement that the board had certified the assessments in violation of the injunction and of the direction of this court, and thereupon an order was issued requiring the members of the board and the attorney general to answer the petition. On the same day a petition based upon the same facts was filed asking the court to declare the assessments so certified null and void. In their answers, the respondents in the contempt proceedings

admit having completed and certified the assesments in violation of the injunction, as alleged, but state that they had completed their sittings as a board and directed that the assessments be certified by the secretary of the board, and had adjourned, before this court construed the effect of the temporary writ of injunction or directed them to await the final disposition of the same, and that in so doing they did not intend any disrespect to this court or abuse of its process, but acted upon the belief that their oaths and their duty as officers required them to act at the time and in the manner in which they did act.

Mr. JUSTICE STEELE delivered the following opinion:

The disposition of the main case practically disposes of these applications. It is urged that the respondents are in contempt of this court notwithstanding the injunction is void, upon the theory that by applying to this court and securing an alternative writ of prohibition and, under cover or protection of such writ, doing the very act prohibited, pending a decision of this court upon the validity of the injunction, the relators have abused the process of this court, and are therefore in contempt. It is undoubtedly the law, and has been so held in many cases, that public officers may properly disobey a void injunction and afterward apply to a superior court for a writ of prohibition to prevent their punishment by the lower court. *People ex rel. Dougan v. District Court*, 6 Colo. 534; *In re Sawyer*, 124 U. S. 200.

And in *Walton v. Develing*, 61 Ill. 201, the court says: "Where the law plainly requires an officer to perform a duty, and he is not exceeding or abusing his powers, but fairly acting within the same, and a

court issues a writ to restrain him from its perform-
ance, he must discharge his duty as prescribed by
the law."

It was the duty of the board, in this case, to diso-
bey the injunction; but the acts that were prohibited
were not such as could be done at one sitting, and
were such as should be performed deliberately and
without the dread of summary process.  Upon the
calling of a meeting for the purpose of violating the
injunction, they could reasonably expect that pro-
cess to punish them for contempt would be procured
with such diligence that their proceedings would be
interrupted by the appearance of an officer with at-
tachments commanding him to take them forthwith
to Pueblo, to answer for contempt in so proceeding.
Is any deliberate body required, or expected, to pro-
ceed with its business under such circumstances?  I
think not.  The injunction, nevertheless, was void;
it was the duty of the respondents to make these
assessments, and to make them without delay.  The
attorney general, as their legal adviser, applied to
this court for an alternative writ of prohibition re-
straining the district judge from proceeding further
in the case pending before him, until the matter
should be passed upon by this court; and such writ
was granted.  It is contended that the asking for
that writ imposed upon him and the board an obli-
gation which did not before exist to respect that
void injunction.  If that were so, it is not such an
obligation as it has ever been held to be contempt to
violate.  But is it so?  Does the alternative writ of
prohibition impose upon parties acting with the most
punctilious regard for the rights of opposing parties,
any duty to preserve inviolate and in full force and
effect the injunction which is alleged to be null and

void? I think not. The only effect of the aid se-
cured in this court was to prevent interference with
the proceedings of the board until the question
should be decided here; and, if it should be decided
that the injunction had rightfully issued, any viola-
tion of it during the pendency of the case here could
be punished by the district court. On the other
hand, if it should be decided to be void, there would
be no contempt of the lower court, and I am unable
to see how the asking for and obtaining of tempo-
rary protection from the interference of the district
court, and the reliance of the respondents upon that
protection, can be considered as a contempt for the
authority or for the process of this court. The writ
of prohibition was not asked, in this case, to pre-
serve an existing condition, but to destroy it. The
writ of injunction is frequently issued for the pur-
pose of preserving the existing condition of prop-
erty in controversy until the final adjudication of the
rights of the parties. If this distinction is observed,
it will be seen that there was no obligation, legal or
ethical, upon these respondents not to violate the in-
junction because of their having asked that it be
formally declared void. And the granting of the
writ did not, therefore, breathe into that void in-
junction any spark of life emanating from this court,
or clothe it with the power and sacredness that
would be given to it by our adoption of it.

The case of *Vanzandt v. Argentine Mining Co.*, 2
McCrary 642, is a much stronger case for the applica-
tion of the theory that a contempt may consist of
the violation of an implied order than this. There
the plaintiff filed a bill in equity alleging his owner-
ship of a certain silver mine in this state, and stating
other facts upon which a preliminary injunction was

granted, restraining the defendant from taking ore from said mine,.or from disposing of any such ore pending the suit. Defendant was in possession prior to the allowance of said injunction and there was no order to disturb the possession. After the allowance and service of the writ the plaintiff took possession of the mine, ejecting the defendant's agents therefrom, and himself shipped ore from it. Upon proceedings to punish him as for contempt, McCrary, circuit judge, said: "A proceeding to punish for contempt is in the nature of a criminal proceeding and to be governed by the strict rules of construction which prevail in criminal cases. Its purpose is not to afford a remedy to the party complaining and who may have been injured by the acts complained of; that remedy must be sought in another way. Its purpose is to vindicate the authority and dignity of the court. We cannot hold that the complainant has subjected himself to this criminal proceeding by taking ore from the mine in dispute. Strictly speaking, the writ of injunction did not by its terms, or of its own force, forbid the complainant to interfere with the possession of the mine pending the suit, and therefore he cannot be held to answer in this proceeding." Judge Hallett concurred in that opinion; and that case is the only one to which our attention has been directed in which it was sought to punish one party as for contempt for violating the spirit or purpose of a restraining order secured by himself and directed to the other party. In that case there was a *status quo* to be maintained, the parties were litigating about the ownershi and pos session of a silver mine; the plaintiff, if he should recover, would be entitled to the property as it existed at the commencement of the suit and not impaired in value by

the removal of ore.    But in this case there is no property to be conserved by the court during the litigation.    It was the duty of the state board of assessors under section 111 of the revenue act to meet on the second Tuesday in August, to hear evidence as to the value of this property, to assess it, and to certify the assessments to the several county clerks on or before the 15th day of September.    The state board of equalization is empowered to hear and decide upon complaints of the assessment of this and other property; it is required to meet on the first Monday in October, and may adjourn from day to day, but not later than the first day of November.    Revenue Law, Sec. 88 B.    The injunction was issued on the 25th day of August; the alternative writ was granted on the 25th of September.    It was more imperative that these duties be performed, on the 25th of September, than it was on the 25th of August.    The *status* had not been maintained, though the assessors had done nothing; it was a constantly changing *status*, owing to the necessity that these acts, and the acts of other officers and boards dependent upon them, be done within the time prescribed by the law. The mere inaction of the board, therefore, would not preserve these plaintiffs in the court below in the position in which they were when they commenced the suit, but would constantly put them in a better position, or, rather, constantly put the officers of the state in a worse position with respect to the performance of their duties.    The writ of prohibition was not intended to put them in a worse position than when they applied for it.    They had respected the injunction until, by the granting of the writ, they received what they no doubt took to be an opinion from this court that the writ was probably void; and in

acting upon that belief and doing their duty under the statute, I do not think it ever occurred to them that they were showing contempt for this court, or were in any way abusing its process.

This court has held that contempts are civil or criminal; that criminal contempt consists in the violation of some order made for the benefit of another, and that a criminal contempt consists of acts disrespectful to the court or its process, or obstructing the administration of justice, or tending to bring the court into disrepute. The acts complained of cannot be included in this definition. It is my opinion that these parties are not guilty of contempt of this court; for they have violated no order of the court, nor have they done any act showing disregard for the process of this court. On the contrary, it is my opinion that they have performed their duties faithfully and conscientiously, relying upon the process of this court for their protection.

The proposition of the corporations to declare the acts of the state board of assessors null and void is both novel and startling. No authority has been cited where any court has ever undertaken to exercise the unwarranted power that, in my opinion, we should exercise if we assume to invalidate the acts of the state board.

Restitution may be granted in a proper case, in furtherance of justice; but the corporations are entitled to no right and no privilege under this injunction, as we have held in the main case. I will concede that, in a suit brought to enjoin the performance of an act, where the act is performed in violation of the injunction long prior to the hearing upon the merits of the controversy, in some instances it may be necessary to restore property to the condition and

position it was in at the time of the granting of the temporary writ, but I know of no rule of logic or justice which would require this court to do the useless thing of requiring the state board of assessors to assemble again to re-certify the lists to the various county clerks. We cannot require these lists to be again certified except as a punishment for contempt, and our authority to punish for contempt is limited to fine or imprisonment, or both fine and imprisonment. The *status*, so called, in this case, cannot be restored; it has vanished with the lapse of time. We cannot say that "this 28th day of October shall be, and is hereby, held to be, the 15th day of September, 1901," consequently it is impossible to place the parties in the position in which they were at the time of the granting of this alternative writ of prohibition.

It is not necessary to multiply reasons for not granting the prayer of these petitioners. It is sufficient so say that, in my opinion, this court has no power to deal with the acts of the state board of assessors, in this proceeding.

*In the proceedings in contempt and on the motion to vacate the action of the board,*

Mr. JUSTICE GABBERT delivered the following opinion.

Upon the filing of the petition for a writ of prohibition a temporary writ or rule to show cause was issued from this court to the district court of Pueblo county, and the Honorable N. Walter Dixon, the judge thereof, and served upon such judge at the instance and request of the relators, through their counsel, the attorney general. By the terms of this writ or rule, the district court and the Honorable Judge were directed to desist and refrain from taking any further

steps in the case brought by the corporations. This is the action in which the jurisdiction of the district court to entertain was challenged by the proceeding in prohibition instituted here. The district court had theretofore issued a temporary injunction in that suit, which was served upon the board, whereby the latter was directed to refrain from taking any further steps in the way of assessing the property of the plaintiffs in that action. Subsequent to suing out the rule upon the district court, and before the cause was submitted and determined by this court, it was charged by the corporations who brought the action in the district court, that the relators in the original proceedings here, acting under the advice of the attorney general, had completed the assessment of their property and made return thereof to the various county officials to whom the law requires such returns to be made. Thereupon such action was had that the relators and the attorney general were required to show cause why they should not be adjudged guilty of, and punished for, contempt. From the returns made and the pleadings filed on behalf of the corporations, and affidavits in support thereof, it appears that the members of the board of assessors—and in speaking of such board, without qualification it will be understood at all times to include their secretary —except Hugh Taylor, F. W. Brush and L. J. Neff, after the suing out of the temporary writ of prohibition and the service thereof, did, in fact, take steps to complete the assessments of the property of the corporations, and certified their returns to the various county clerks to whom such returns were required to be made, and that such action was taken by and with the consent of the attorney general, and under

his advice; that the three parties above named were not present at any of the meetings of the board at which these acts were committed, and took no steps whatever in relation thereto.

All the parties disclaim any intent to commit acts of disrespect, or to disregard the orders of this court, or to abuse its process or violate its confidence. The acts of the secretary were ministerial, or clerical, in their nature, and performed under the direction of the assessors taking part in the meetings of the board. These members specially answer to the effect that the acts which they performed at their meetings were in the discharge of their official duties, and in obedience to their official oaths. The attorney general also states that he believed it was his duty to advise the members of the board to keep their oaths of office, and perform their official duties rather than obey the injunction issued by the district court, which, in his opinion, was null and void. The corporations also filed a motion for an order vacating all acts the board performed subsequent to the institution of the original prohibition proceedings in this court.

Upon these facts two questions are presented for consideration: (1) Are the state board of assessors and the attorney general guilty of contempt; and (2) should the acts of the former performed after the temporary writ of prohibition was issued out of this court, be set aside?

The returns of the three members of the board above named relieve them from the charge of contempt, and they should be discharged, and what is said upon the questions under consideration will only apply to the other members of the board and the attorney general. The general rule is fully recog-

nized, that where parties to a cause have been cited for contempt, such proceedings should be disposed of and the parties charged, if guilty, purged of the contempt, before the main cause is heard upon the merits. Were the parties here charged with contempt acting in their own behalf only, the rule should be rigidly enforced. Behind the relators in the prohibition proceedings, the real parties in interest are the people of the state of Colorado, and their rights should not be curtailed or jeopardized, nor should they be refused a hearing because individuals (although their officials) have been guilty of a wrong; hence, in this instance it is proper to dispose of the question raised by the relators in the prohibition proceedings independent of what the result may be in the proceedings for contempt, or the motion to vacate. If the board and the attorney general are guilty of contempt, it is a contempt of this court and not of the district court for the reason that one court cannot punish for a contempt of another; and the fact that the injunction issued out of the district court was disobeyed, or that it may have been a nullity, is of no importance further than it is to be considered in determining what specific duties were enjoined upon the board by virtue of their having secured the temporary process of this court which stayed the action of the district court until the prohibition proceedings could be heard and disposed of. If the acts of the board and the attorney general which form the basis of the proceedings for contempt are not wrongful, and of no force or effect, then one of two conditions exists. Either their acts were useless and of no avail, or there is nothing for this court to determine in the prohibition proceedings proper. All acts which are calculated to impede, em-

barrass or obstruct a court in the administration of justice, constitute a contempt. *Wyatt v. People*, 17 Colo. 252; *People v. Stapleton*, 18 Colo. 568.

The power to punish for such acts has existed and been recognized in the courts from the time that the system of judicial procedure which has grown up under the benign influence and broad principles of the common law, was adopted. It is a power that is exercised to protect the rights of litigants, and to enforce its mandates, when no other remedy is either adequate or practicable; for, without the power to enforce its orders, a court would be a useless institution. When a party institutes an action in any court, the tribunal in which such action is commenced must be just as careful in guarding the rights of those against whom the procedure is directed as in protecting the rights of the plaintiff. The prime object of having judicial tribunals is to provide a method whereby all citizens, whoever they may be, or whatever their standing, may have their disputes settled in an orderly and peaceful manner. Parties cannot take the law into their own hands and settle their rights according to their own notions of what is right and wrong. Courts are instituted for the purpose of settling controversies which disputants are unable to amicably arrange between themselves, and all must recognize this fact. The relators in the prohibition proceedings had been enjoined by the district court of Pueblo county from performing their official duties. Very properly, and for the express purpose of testing the jurisdiction of that court to make such an order, they applied to this court to settle that question. Their action in this respect is highly commendable, and it is to be regretted that they did not continue in the same orderly course.

For the purpose of preventing further complications and the taking of steps which might further embarrass them in the discharge of their official duties, they obtained an order of this court which stayed the hands of the lower tribunal until the question raised in their behalf could be determined. This order, although directed to the district court and the Honorable Judge, as effectually stayed the hands of the corporations who commenced the action in the district court, so far, at least, as that proceeding was concerned, as if it had been directed to them. Their contention was that the district court did have jurisdiction, and it was just as necessary in order that the disputed questions might be finally settled, and the rights of all protected, that no further steps be taken by those whose progress they had arrested, as it was that the corporations should cease action for the time being. In short—in order that the rights of neither might be invaded or jeopardized, that all matters involved in the action in the district court should remain in the condition they were when this court temporarily stayed that litigation.

If there had not been enjoined upon the relators in the prohibition proceedings the same duty which, at their instance, was enjoined upon their adversaries, or if, notwithstanding the fact that they had obtained a temporary writ of prohibition, they could proceed to perform the acts which, indirectly, they asked this court to say they had the right to perform in the face of the injunction, why appeal to this court to have this question determined? If, in the circumstances, they had the right to proceed in the execution of their official duties, which they had been enjoined from performing by the district court, and they have, in law and in fact, performed them, then

there is nothing for this court to determine. The vital question was the authority of the district court to issue that injunction, and if the acts they have performed, which form the basis of this inquiry, are of any validity, then the prohibition proceedings are dead. Courts settle only living issues, or determine questions actually in dispute, and if the acts of the relators are valid, there is no longer any dispute to settle.

When the relators obtained the order they did, the law at once imposed upon them the same obligation which, at their instance, was imposed upon their adversaries. If this is not the inevitable conclusion, then all proceedings in any court wherein the moving party obtains a temporary order to preserve the *status quo*, can be converted into an instrument under the protection of which the greatest wrongs could be perpetrated, and the courts are rendered powerless to prevent their process of this character from being used as a means to trample upon and destroy the rights of the parties against whom it is directed. It often occurs that parties who obtain a temporary restraining order are subsequently adjudged not entitled thereto, and to have no rights in the subject matter of controversy which it is the pur pose of such order to preserve pending litigation. If in all cases the party obtaining scuh an order is not himself bound to preserve the *status quo*, then a door is opened for the commission of the greatest frauds. The simple contemplation of the results arising from a doctrine which would permit any action to the contrary is sufficient authority upon which to base the conclusion that it cannot be tolerated in the slightest degree. It is no defense in this instance to say that the corporations have not been

injured, because we have held that the relators should not have been enjoined. There can be no such rule as that applied, because the only safe one is an unqualified inhibition of conduct by parties who have invoked the power of the court to preserve intact the subject matter of controversy pending litigation, which would have a contrary result.

Neither is it any defense to say that the board, in performing these acts, were observing their official oaths. When they voluntarily submitted their controversy with the corporations to this court, and obtained the order they did, the law for the time being relieved them from taking further steps in the performance of their official duties until their rights had been determined in this court, or imposed upon them the obligation of committing no wrong under guise of the claim that they were impelled to do so because of the obligation of their official oaths. No oath of office ever imposed upon the person taking it an obligation to commit a wrong. The contention of the relators in the prohibition proceedings was, that they had the right to discharge their official duties notwithstanding the injunction of the lower court, and having submitted that question to this court, they were bound to await its determination the same as any other litigant.

Numerous authorities can be found wherein it has been held that when a party has obtained an order of court the purpose of which is to preserve the *status quo* of the subject matter of controversy, that the same obligation is imposed upon the party obtaining such order as he has had imposed upon his adversary, and that if he violates his obligation in this respect it is within the province, as well as the duty, of the court to restore things to the same

plight and condition, so far as physically possible, as they existed when the order was obtained. It is only necessary to cite a few. *Lake Shore & M. S. R. Co. v. Taylor*, 134 Ill. 603; *Van Zandt v. Argentine M. Co.* 48 Fed. Rep. 770; *Hamill v. Bank of Clear Creek*, 21 Colo. 173.

It may be that no authority can be found which can be said to be directly in point, because none have been cited wherein the facts are the same as those now under consideration. This can doubtless be explained upon the hypothesis that no litigant has ever had the temerity to assume the position that he had the right to take steps such as the relators have taken in the circumstances of this case. However this may be, abundant authority exists supporting the principle involved in this proceeding. It would be strange if any well-considered case directly in point, based upon tenable grounds, or supported by logical reasoning, can be found to the contrary. In my opinion, none either upon facts or principle have been cited which, in the slightest degree, militate against the doctrine which, in my judgment, must control the determination of this proceeding.

Acts of parties which have the effect of changing the conditions existing at the time a restraining order is obtained, are certainly calculated to impede and embarrass the administration of justice. What can seem more unjust, or what is more likely to bring a court into disrepute, than the spectacle of a party who himself has tied the hands of his adversary, deliberately proceeding to change conditions with respect to such matters, pending the determination of the cause upon its merits, in which the order was obtained? If he may do so in the slightest degree, without rebuke, or being held guilty of the commis-

sion of a wrong, then indeed, is the power of the courts set at naught, and they stand shorn of their ability to redress or prevent wrongs in that class of cases.   Suppose, in this instance, that the judgment of this court in the prohibition proceedings proper had been that the relators were not entitled to the writ—what would have been the duty of the court with respect to the action of the board, in order that justice might be done?   Certainly to restore the *status quo*.   But suppose again that no order of the court would directly have that effect—then what would have been its duty?   Clearly, to have coerced the relators to restore the *status quo*.   Consider the case from every imaginable point of view, and in my opinion, a proper regard for the rights of litigants demands that a party who has obtained process to preserve the *status quo* can under no circumstances take a step or perform an act which will change it.

An act which results in a wrong is illegal.   The board being inhibited by virtue of having sued out the temporary writ of prohibition from performing the acts they did, such acts are void, and being of no force and effect, the main cause stood for de-termination the same as though they had never been committed.

An attorney who advises a course to be taken by parties which, when followed, results in a contempt, is himself guilty of a contempt.

No doubt considerable feeling may have been en-gendered between the parties to the litigation of which this is an outgrowth, but this cannot excuse contumacious conduct.   Perhaps the board and the attorney general may feel that the exigencies of the occasion demanded that they take the steps they did.   However urgent it may have seemed to them

to act, it does not make their conduct in this instance any the less a wrong, nor is it a condition which this court can, under any circumstances, recognize as an excuse for trifling with its process. There are constitutional methods provided by which the questions arising over the revenue law can be peacefully and legally settled and determined, and all parties interested, whether officials or private parties, must pursue this course. This court can not tolerate any other.

It is the duty of every citizen to obey the law. Upon officials this injunction rests with particular force. If persons charged with the execution of the law are themselves guilty of not obeying it, or are not held to a strict accountability for a violation of its mandates, how can it be expected that the private citizen will have respect for the law?

In my opinion the members of the board—except those above named—the secretary, and the attorney general are guilty of contempt of this court; that all proceedings of the board subsequent to the date when the temporary writ of prohibition was sued out in the main case are absolutely null and void; and that the motion to set aside and vacate such proceedings of the board should be sustained.

*Per Curiam.*—The writ of prohibition will issue, as prayed. The district court of Pueblo county is directed to dissolve the temporary injunction and to dismiss the action in which it was issued.

In the matter of the proceedings for contempt, Hugh Taylor, F. W. Brush and L. J. Neff are adjudged not guilty, and are discharged. In this matter the members of the court present being unable to agree upon the judgment which should be ren-

dered as to the remaining members of the board, its secretary, and the attorney general, or on the motion to vacate, these matters will stand for the consideration of the court when all the members are present.

*On petition for rehearing on question of jurisdiction.*

Mr. JUSTICE GABBERT delivered the opinion of the court.

A discussion of the questions raised by the corporations on petition for rehearing will be mainly devoted to a review of, and excerpts from, the cases cited by the respective parties on the subject of jurisdiction. It is claimed on behalf of the corporations, that unless they are permitted to proceed with this action, they will be compelled to institute a great number of actions, in order to protect their rights, and that equity will take jurisdiction of a case the object of which is to prevent a multiplicity of suits. As a general proposition this is undoubtedly correct, but immaterial to a determination of the case at bar, for the reason that the question is not whether the complaint filed in the district court states a cause of action, but does it state one which that tribunal has jurisdiction to entertain?

Counsel for the corporations state that executive officials are not above the law, and that they are bound thereby the same as every private citizen; and that they are amenable to the same processes and the same remedies as the private citizen. That this is correct when a case is presented which involves these questions cannot be gainsaid. Whether the proposition advanced is applicable when it is sought to enjoin executive governmental acts, upon the ground that the law under which the executive offi-

cial is acting is unconstitutional, is the pivotal question involved, and can best be determined by a review of authorities bearing on the subject. We will first notice those cited by counsel for the corporations.

Mechem on Public Officers, at § 995, states, in effect,that where public officers are proceeding without authority of law, or in violation of its provisions, or by virtue of an unconstitutional enactment to perform acts which materially effect the private rights of individuals, and for which they have no adequate remedy at law, an injunction will be granted to restrain them. Not a single authority cited by the author in support of the text justifies the statement that injunction will lie to restrain public officers from executing an unconstitutional law.

In Story's Equity Jurisprudence, 12th ed., § 955a, the question there considered is, how far a court of equity has jurisdiction to interfere with public functionaries who are exercising special public trusts or functions, and on this proposition states in effect, that so long as such officials confine themselves to the exercise of the duties which are confided to them by law, a court of equity will not interfere; but if they depart from that power, or assume a power over property which the law does not give them, a court of equity no longer considers them as acting under authority of their commission, but treats them as persons dealing with property without legal authority. As applied to the facts in cases which the author cites in support of the text,the propositions stated are correct. None of the cases, however, declare, that an executive governmental act can be enjoined upon the ground that the law under which an official is acting is unconstitutional, except the case of *Galloway v.*

*Chatham R. R. Co.*, 63 N. C., 147. From a reading of the several opinions filed in this case, it appears that the question of the jurisdiction of the court over the proceeding on the ground that the act sought to be enjoined was executive, was not considered by the majority; in fact, was conceded, for the evident desire of the parties to procure the judgment of the court on the question of the validity of the bonds involved induced them to waive all questions of jurisdiction. We find, however, that Reade, Justice, in a dissenting opinion, does raise the question, and his remarks upon the subject are both instructive and forceful. That the author did not intend the declaration in the text to cover executive acts of a governmental nature appears from the note to the text in question, where it is said that the officials of the executive department of the general government cannot be enjoined from performing acts not strictly ministerial—citing *Gaines v. Thompson*, 7 Wall., 347 —and that the president cannot be enjoined from carrying out an unconstitutional act of congress— *Mississippi v. Johnson*, 4 Wall. 475.

In Pomeroy's Equity Jurisprudence, 2nd ed., § 1345, it is said that an injunction will not be granted to restrain persons from acting as public officers, but that illegal, unlawful or improper acts may be restrained when they would prejudice and irreparably injure, or create a cloud upon title, and that to prevent a cloud upon title, the use of the injunction is governed by the same rules which control the remedy for removing a cloud upon title. Commenting upon this provision, counsel say that the author in saying that an injunction will not be granted to restrain persons from acting as public officers, means that an injunction would not be granted to prevent

them from acting within the scope of their legal authority, as distinguished from illegal, unlawful, unauthorized and unconstitutional acts. In this counsel are clearly mistaken. An examination of the note in support of the text in question discloses that the author referred solely to the question of the authority of the courts to test the right to a public office under injunctive process.

The case of *Taylor v. Louisville & N. R. Co.*, 88 Fed. Rep. 350, is strongly relied upon, it being asserted that every question involved in the case at bar was there resolved in favor of the contention of counsel for the corporations. The facts in that case clearly distinguish it from the one at bar. While a state board of assessors was enjoined from certifying an assessment of corporate property, it was not upon the ground that the law under which the board assumed to act was unconstitutional, but that the board had not followed the law in making the assessment. It appears that the uniform practice in the state of Tennessee was to assess real property at not exceeding seventy-five per cent of its true value, and that, notwithstanding this practice, the state board of assessors assessed the corporate property under their jurisdiction at its full value, and the court held that this action was illegal and unwarranted, because corporate property could not be assessed at a rate as compared with its real value higher than the rate adopted by assessing officers in valuing other classes of taxable property in the state. So that the decision in that case was based upon the ground that the board of assessors, by violating the law under which they assumed to act, were attempting to impose upon the complainant an illegal burden, in violation of its right under the state constitution, to pay only an

equal share of the taxes in proportion to the value of its property.

In 85 Fed. Rep. 302, the above case was heard at *nisi prius*, and the trial court held that a court of equity would grant relief from an unequal tax. That was the ground upon which an injunction was issued against the state board of equalization, and this action subsequently affirmed in *Taylor v. Louisville & N. R. Co., supra.* The cases of *Sandford v. Poe*, reported in 69 Fed. Rep. 546, and 61 Fed. Rep. 470, and *Western U. T. Co. v. Norman,* 77 Fed. Rep. 13, will be noticed later.

The case of *U. P. Ry. Co. v. Cheyenne,* 113 U. S. 516, was an action on the part of the railroad company to enjoin the city of Cheyenne and its marshal from collecting an alleged illegal tax. The contention of the railroad company was sustained, but the action was not, as in the case at bar, against an assessing board.

The case of *Chicago & N. W. R. Co. v. Dey,* 35 Fed. Rep. 866, is one deserving of careful attention, because of the acknowledged ability and eminence of the writer of the opinion in that case. The action was brought by the railroad company to restrain the defendants, who were railroad commissioners of the state of Iowa, from taking steps to enforce a schedule of rates for railroad charges. It was claimed that the law under which the commissioners acted was unconstitutional. The jurisdiction of the court to entertain the action is discussed, and was resolved against the defendants, although the court very frankly states that the question was a doubtful one. The real question in the case, and one upon which a decision might well have been predicated without passing upon the validity of the law (it was held constitu-

tional) was, that the rates fixed by the commission-
ers were unreasonably low, and therefore in violа-
tion of the law under which the commissioners had
acted. The distinguishing feature of the case, how-
ever, is this: The functions of the commissioners
were not governmental in the sense that they in any
manner related to, or were necessary for, the carry-
ing on of the state government. The state received
no revenue from this source; the law affected many
private rights, but not the state as a state. This is
made clear by the reasons assigned in the opinion
why the action was not one against the state.

*Gregg v. Sandford*, 65 Fed. Rep. 151, was an action
on the part of the Adams Express Company to re-
strain the defendant, the auditor general of the com-
monwealth of Pennsylvania, from assessing a tax upon
its property. The Adams Express Company was a
joint stock association, and the sole question was,
whether or not such an association was subject to
taxation under an act imposing taxes upon the capi-
tal stock of incorporated companies organized under
the laws of the state of Pennsylvania, and of every
other company incorporated by any other state
doing business in that state. The court held that
inasmuch as the Adams Express Company was a
joint stock association, it was not subject to taxation
under the law in question, and that, therefore, the
defendant was acting without authority. This is
made clear from that part of the opinion which
quotes from the case of *Rogan v. Trust Co.*, 154 U. S.
362, the following: "A valid law may be wrongfully
administered by officers of the state, and so as to
make such administration an illegal burden and ex-
action upon the individual. A tax law, as it leaves
the legislative hands, may not be obnoxious to any

challenge, and yet the officers charged with the administration of that valid tax law may so act under it in the matter of assessment or collection, as to work an illegal trespass upon the property rights of the individual. They may go beyond the powers thereby conferred, and when they do so, the fact that they are assuming to act under a valid law will not oust the courts of jurisdiction to restrain their excessive and illegal acts."

As to *Ogden v. Armstrong*, 168 U. S. 224, it is sufficient to say that was an action to restrain the collection of a tax, for an accounting of assessments paid as taxes under protest, and that sales of real estate for such taxes be set aside, for the reason that the assessment under which such taxes were levied was illegal and void.

So far as necessary to notice, the *Ill. Central R. Co. v. Adams*, 130 U. S. 28, was an action to restrain the revenue agent of the state of Mississippi from bringing any action or advising any of the counties or towns along the line of complainant's road to bring suit for the recovery of taxes levied against the road, for the reason that under the laws of the state of Mississippi the property in question was exempt from the tax levied by the revenue agent.

*Osborn v. Bank*, 9 Wheat. 738, it is claimed, is an authority which fully supports the contention of counsel for the corporations in the case under consideration. From an analysis of the opinion in that case, in connection with the facts upon which it is predicated, it is clear that the conclusion announced, that the district court of Pueblo county was without jurisdiction, does not conflict with any doctrine announced in that case. It appears that a bill was filed in the *nisi prius* court, at the September term,

1819, on behalf of the bank, to restrain the auditor of the state of Ohio from proceeding to collect a tax authorized by an act of the legislature of that state passed February 18, 1819. The act in question provided that if, after the first day of the following September the bank continued to transact business in the state it should be liable to pay an annual tax of $50,-000 on each office of discount and deposit, and that on the 15th of September the auditor should charge such tax to the bank, and should make out his warrant under his seal of office, directed to any person, commanding him to collect the tax, who should enter the banking house and demand the same, and if payment should not be made, should levy the amount on money or other goods of the bank. On the 14th of September an order was made awarding an injunction against the auditor. In September, 1820, leave was given to file a supplemental and amended bill, and to make new parties, from which it appears that subsequent to the service of the injunction on the auditor, and on the 17th of September, 1819, an employe of the auditor entered the office of the bank at Chilicothe, and took therefrom notes belonging to, or on deposit with the plaintiffs. The trial court awarded a return of the money, and also enjoined the auditor and others who had been made parties, from further attempting to execute the law in question. It was claimed on behalf of the bank that the law of the state of Ohio under which the auditor assumed to act was unconstitutional. The supreme court held that it was, and the question was presented, whether, upon that ground or any other, suit could be maintained against an official of the state of Ohio, to enjoin him from executing a law of that state. In subdivision 5 of the opinion, this question is dis-

cussed, and it may be said, the court announced that the original bill stated a cause for an injunction against the auditor. It will be borne in mind, however, that the auditor was simply the collector, and that the action, as stated in the original bill, was to enjoin him from collecting the tax in question. However this may be, the court appears to have been in some doubt regarding the sufficiency of the original bill, for near the latter end of that portion of the opinion which discusses this question, it is said: "But were it even to be admitted that the injunction in the first instance was improperly awarded, and that the original bill could not be maintained, that would not, we think, materially affect the case. An amended and supplemental bill making new parties, has been filed in the cause, and on that bill, with the proceedings under it, the decree was pronounced. The question is, whether that bill and those proceedings support the decree."

According to the amended bill, the particular issue presented was, whether or not the bank was entitled to recover the $100,000 which the auditor had caused to be collected. In such a case it was undoubtedly within the power of the court to determine the constitutionality of the act under which he had made that collection; and for this reason, as well as the further one that the auditor was merely a collector, and the scope of the original action was to enjoin him from collecting what was claimed to be an illegal tax directly levied by an act of the legislature, the case is not in point; neither does it support the contention, in the circumstances of this case, that assessing officers may be enjoined from taking the steps which the law directs they shall take, even under a law which is claimed to be in-

valid. The distinction between such case and that of an official whose duty it is to merely collect a tax, is marked. The latter may be enjoined from enforcing such collection without affecting the taxing authority of the state, but to restrain an assessor results practically in throwing the entire taxing machinery within his jurisdiction into a state of confusion, by preventing other officials from proceeding to execute the revenue laws as against those who raise no question as to its legality.

In *Marbury v. Madison*, 1 Cranch 137, it was held that the acts of an executive official could not be directly controlled except as to acts which were purely ministerial. The doctrine of that case has never been doubted. It has sometimes been difficult to distinguish between acts which were executive, and those which were ministerial.

*State v. Cunninghum*, 81 Wis. 441, is an action wherein it appears that jurisdiction was assumed to restrain the secretary of state from giving the election notices under an apportionment act which, it was alleged, was unconstitutional. The theory upon which the court proceeded in disposing of this question was, that the official acts of the secretary of state, in issuing and publishing such notices of election, were purely ministerial, and therefore could be controlled either by mandamus or by injunction, as the exigencies of the case might require.

In *Chaffraix v. Board of Liquidation*, 11 Fed. Rep. 638, state officials were enjoined from diverting a fund derived by taxation from the purpose for which it was intended. It appears, however, from an examination of the case that no governmental functions were involved; and further, that the only objection to jurisdiction urged and considered was, that the

state of Louisiana was the real party defendant, and could not be sued in the federal court by a citizen of another government, by reason of the eleventh amendment to the constitution of the United States.

*Louisiana State Lottery v. Fitzpatrick*, 3 Woods, C. C. 232, was an action involving private rights only.

*Lyons v. Polk*, 8 B. J. Lea 121, was an action on the part of taxpayers of the state of Tennessee to restrain a funding board created by an act of the legislature from issuing compromise bonds in cancellation of a pre-existing indebtedness of the state. In the bill it was alleged that the act of the legislature authorizing this action was unconstitutional. The jurisdiction of the court to entertain the action for the reason that it was against state officials, was challenged. A majority of the court held that the point was not well taken, but two of the justices dissented, assigning as their reason that the validity of the act could not be raised by a direct proceeding against the funding board because they were state officials. A majority of the court seemed to have reached the conclusion that the parties made defendants were not, in fact, state officials. The conclusion on the subject of jurisdiction, however, was correct, for tne reason that only private rights were involved, and the action against the state board did not in any manner tend to interfere with governmental duties in the sense that they affected the state.

From *Davis v. Gray*, 16 Wall. 203, it appears that the state of Texas had granted a railroad coroporation certain lands, upon conditions to be complied with by the company. Subsequently, the legislature passed a resolution to the effect that such conditions had not been observed, and declared the lands forfeited. An action was then commenced by the

receiver of the company, to restrain the state offi-
cials from disposing of such lands. The receiver of
the railroad company was simply attempting to pre-
vent the state from violating its contract.

*Pennoyer v. McConnaughy*, 140 U. S. 1, was an action
in equity to restrain the board of land commissioners
of the state of Oregon from doing acts which, it was·
claimed, were violative of plaintiff's contract with
the state under which he purchased certain lands.
The board was following a law, or laws, passed by
the legislature subsequent to the date when plaintiff
made his purchase. It was held that these laws
were unconstitutional, for the reason that a state
cannot violate its solemn contracts any more than an
individual, whatever means it may employ in attempt-
ing to accomplish such an end. Contractual rights
only were involved.

In *Poindexter v. Greenhow*, treasurer of the city of
Richmond, 114 U. S. 270, the constitutionality of an
act of the general assembly of the state of Virginia
was drawn in question. The plaintiff had tendered
in payment of his taxes past-due interest coupons
upon bonds of the state, which, when issued, it was
provided by law should be receivable in taxes due
the state. Subsequently a law was passed which
took away this right. On the authority of the latter
act, the treasurer refused to receive the coupons, and
seized the personal property of the plaintiff. The
latter brought an action against the treasurer to re-
cover such property, and, of course, prevailed, be-
cause the state could not impair the obligation of its
contract.

In *L. & N. R. Co. v. Warren County Court*, 5 Bush
(Ky.) 243, the assessing authorities were restrained
from assessing property because the law under which

they assumed to act did not authorize them to do so.

*Louisville Water Co. v. Clark,* 94 Ky. 47, and *Gates v. Barrett,* 79 Ky. 295, were merely actions to restrain the collection of taxes which, it was claimed, were illegal.

A great many authorities are cited by counsel wherein it is held that the collection of an illegal tax will be enjoined. In all these cases the action was against an official to whom was delegated the authority to collect such tax. The relation of such an official to the state and her citizens is entirely different from that conferred upon the petitioners in the case at bar. The law imposes upon a collector certain definite and specific duties which he is directed to peremptorily perform, and in the performance of which he is vested with no discretion, whereas, petitioners, in the discharge of their duties, must exercise both judgment and discretion.

From the foregoing review it appears that illegal and unlawful acts of public officers, which injuriously affect the private rights of individuals, and for which they have no adequate remedy at law, may be restrained, but not in the sense that such acts may be enjoined when governmental in their nature, upon the ground that the law under which such officials assumed to act is claimed to be unconstitutional. The circumstances in which such acts will be enjoined, as disclosed by the foregoing cases are:

When the officials have violated, or are not proceeding in the manner provided by the law under which they assume to act;

When the action is against officials charged with the duty of *collecting* an alleged illegal tax;

When the action is against officials to restrain them

from exercising functions which are not governmental;

When the acts complained of are purely ministerial.

When private rights only are involved; or

To prevent a state from avoiding or violating its solemn contracts.

We will now notice *Sandford v. Poe*, 61 Fed. Rep. 470, and the same case on appeal, 69 Fed. Rep. 546. This action was for the purpose of enjoining the assessment of a tax by a board of tax appraisers. It was claimed that the law known as the "Nichols Law" violated the constitution of the state of Ohio. In order to understand the question of jurisdiction decided, we must turn to the case of *Western U. T. Co. v. Poe*, 61 Fed. Rep. 449, which was similar in all respects to the Sandford case. The telegraph case was first decided, and followed in the Sandford case. The law was held unconstitutional. The court seems to have based its authority to entertain the action principally upon the ground of its general equitable jurisdiction, for the reason that from the facts alleged, complainant was entitled to the relief prayed, so as to avoid a multiplicity of suits. Like the case at bar, the real question was not whether a cause of action was stated, but was one stated of which the court had jurisdiction? The latter proposition was very briefly considered. It appears to have been urged that the injunction sought was premature, in that it was against the valuers and not against the collectors. It was held that this objection was not tenable, but not a single authority is cited in support of this conclusion. Later the supreme court of the state of Ohio held the law constitutional, and the United States circuit court reversed its former ruling on the ques-

tion of the validity of the law as appears from the syllabus to the case of *Western U. T. Co.*, 64 Fed., Rep. 9, as follows:

"Where a federal court decides on demurrer that a state statute, the validity of which has never been passed upon by the highest court of the state, is in violation of the constitution of such state, and afterwards, but before a final decree is entered in the federal court, the state supreme court decides that such statute is constitutional, the federal court will reverse its former ruling in deference to the decision of the state court."

Thereafter the court considered the question, whether the facts averred in the bill did not make a case for enjoining the appraisers, because the assessment was not in accordance with the law. This was resolved against the complainants. The cases then went to the United States circuit court of appeals, and are reported in 69 Fed. Rep. 546. From the opinion in that case it is clear that the question of the authority of complainants to sustain an action against state officials to enjoin them from exercising governmental functions, was not considered. The court does state, in effect, that if the assessments complained of were illegal for any reason, the jurisdiction of a court of equity to enjoin the defendants from certifying such assessments attach upon the ground that a multiplicity of suits would result, unless the assessments were enjoined. It is then stated: "To require the complainant to pay each of the numerous auditors and then sue to recover, or to enjoin each, would be most oppressive. We think, therefore, that the jurisdiction asserted in the bill, of avoiding a multiplicity of suits, was sufficient ground to support the original bill, as well as the

bills subsequently filed." So, it appears that the question raised in the case at bar was not considered; that the court resolved the question of jurisdiction solely upon the ground that a cause of action was stated, without considering the question of the right of complainants to maintain their action against state officials.

*The Western U. T. Co. v. Norman,* 77 Fed. Rep. 13, was a suit in a *nisi prius* court, the object of which was to enjoin the defendant, as auditor ot the state of Kentucky, from attempting to collect a tax assessed against the complainants, and from certifying to the county clerks the assessments to be collected in each county. One ground stated in the bill was the alleged unconstitutionality of the law under which the tax in question was to be assessed and collected. Nowhere in the opinion does it appear that the question of jurisdiction, as raised in the case at bar, was even mooted. Further, it is apparent that the court mistook the questions decided in *Louisville & N. R. Co. v. Warren County Court, Gates v. Barrett,* and *Water Co. v. Clark, supra*—all Kentucky cases— which were cited in support of this statement in the opinion: "It is the uniform practice in this state to allow an injunction to restrain either the assessment or collection of illegal taxes, and the equity jurisdiction in such cases has been frequently sustained by the court of appeals."

The above cases, as we have already noticed, only sustain the doctrine that the *collection* of an illegal tax, or an unauthorized assessment, may be enjoined. We must, therefore, conclude that not a single case passed upon by a court of review which has been cited by counsel for the corporations, sustains the position that the state board of assessors

can be restrained in the circumstances narrated in their complaint filed in the district court, unless it be *Sandford v. Poe, supra.* In that case, however, the question was not discussed.

We will now refer to a few cases in which the jurisdiction of the courts to directly control the acts of executive officers has been considered. In *Mississippi v. Johnson, President,* 4 Wall. 475, it is held that the president of the United States could not be restrained from carrying into effect an act of congress alleged to be unconstitutional. This conclusion was reached because the duty imposed upon the president by the act in question was purely executive and political. The court said, in part, "An attempt on the part of the judicial department of the government to enforce the performance of such duties by the president might be justly characterized, in the language of Chief Justice Marshall as 'an absurd and excessive extravagance.' * * * It was admitted in the argument that the application now made to us is without precedent, and this is of much weight against it. Had it been supposed at the bar that this court would in any case interpose by injunction to prevent the execution of an unconstitutional act of congress, it can hardly be doubted that applications with that object would have been heretofore addressed to it. Occasions have not been wanting."

The difference in the degree of the dignity of an executive act arising from the comparative positions of executive officials certainly cannot change the principle.

In *Smith v. Myers,* 9 N. E. Rep. 692, it was decided that as the constitution and the statutes of the state of Indiana required certified copies of the returns of the votes cast for lieutenant governor to be trans-

mitted to the speaker of the house of representatives, in care of the secretary of state, the courts had no authority to enjoin those certified returns in the hands of the secretary of state. It was claimed that such certificates and returns were wrongful and illegal. In determining the question of jurisdiction, the court said: "The question which faces us at the threshold, is one of controlling influence, and the answer to it must rule our decision. The question of jurisdiction is always one of importance, but in no case is it more important than where, as here, the extraordinary remedy of injunction is invoked to control the acts of officers holding high places in the government of the state. In cases like this where the judicial department is asked to enjoin an officer of a different branch of the government from performing an official act, the question is always one of dominating force, and sometimes of perplexing difficulty. On the other hand, no consideration of policy or convenience should induce the courts to assume to exercise a power that does not belong to them, nor, on the other hand, should any consideration of that kind, or of any kind, induce them to surrender a power which it is their duty to exercise. The assumption of a power not vested in them would be a violation of the constitution, since it would be an usurpation of a power conferred upon another branch of the government. It would disturb the system of checks and balances which the constitution has so carefully constructed, and which the courts have ever guarded with most scrupulous care. The question is as important as any that the courts encounter in the whole range of judicial investigation, and it is always regarded as one of great delicacy, to be considered with care and disposed of with caution. * * * It is a principle of constitu-

tional law, declared in our constitution and enforced by many decisions of our own and other courts, that the departments of government are separate and distinct, and that the officers of one department shall not invade any other."

In *Hawkins v. Governor*, 1, Ark. 570,—33 Am. Dec., 346,—the question of the authority of the court to issue a writ of mandamus to compel the governor of the state to grant a commission to a subordinate functionary, was discussed. On this subject the court said: "The solution of this question depends mainly upon the construction to be given to the constitutional powers to be distributed among the three separate and distinct departments of the government. The constitution is the supreme, paramount law of the land, and its will is imperative and must be obeyed. The constitution is nothing more or less than the original and supreme will of the people, acting in convention, and organizing the government, and assigning to the different departments their respective powers and duties. Their powers and duties are defined and limited, and 'that their limits may not be mistaken or forgotten, the constitution is written;' and all public officers are required to take an oath of office to support it.   *   *   *   It is the duty of the judiciary, however, to judge and in their judgments courts should be careful to not overstep the boundaries of their powers. To allow the judiciary to exercise powers not conferred upon it by the constitution would have a tendency to draw to it all the powers of the government, and thereby to overthrow the balance of the constitution. Such a jurisdiction has, however, never been attempted, and probably never will be under our form of government."

In *Thompson v. Canal Commissioners*, 2 Abbott's Practice, 248, it was decided, as stated in the syllabus: "The courts of this state have no power to restrain by injunction the acts of officers of the state who are proceeding under authority of a law of the state. That such law is unconstitutional forms no ground for granting such injunction." The facts in that case were, that the plaintiff, as a tax-payer, commenced an action to enjoin the Canal Commissioners of the state of New York, to prevent them from receiving bids for a loan, or issuing stock for it, under a law of the state which, it was alleged, was unconstitutional, and the court reached the conclusion announced upon the theory that the judicial department had no authority to enjoin executive officers from the performance of executive acts.

In *Western R. Co., v. DeGraff*, 27 Minn. 1, it was held that no act done or threatened to be done by a member of the executive department of the state government in his official capacity, could be interfered with by injunction. On this proposition the court said, in effect, that the conclusion was based upon the constitutional principle, that each department of government is entirely independent of the other, so that neither can be made amenable to any other, for its action or judgment in discharging the duties imposed upon it.

In discussing this subject, 2 High on Injunctions, 2nd ed. § 1326, states, in substance, that delicate and interesting questions sometimes arise, touching the extent to which the judiciary may interfere with the executive department of the government; that the true test in such cases is the nature of the specific act in question; that if the act which it is sought to

enjoin is executive, its performance will not be prevented by injunction.

Generally, on the subject of the authority of one department of the government to directly interfere with the other, the language of the court in *DeChastellux v. Fairchild*, 15 Pa. St., 18—53 Am. Dec., 570—very clearly defines the functions of the several departments of government. It is there stated: "The functions of the several parts of the government are thoroughly separated and distinctly assigned to the principal branches of it, the legislative, the executive and the judicial, which, within their respective departments, are equal and co-ordinate. Each derives its authority, mediately or immediately, from the people, and each is responsible, mediately or immediately, to the people, for the exercise of it. When either shall have usurped the powers of one, or both, of its fellows, then will have been effected a revolution, not in the form of the government, but in its action; then will there be a concentration of the powers of the government in a single branch of it, which, whatever may be the form of the constitution, will be despotism—a government of unlimited, irresponsible, and arbitrary rule."

The primary purpose of having three distinct departments is, that each, if confined to its proper sphere, acts as a check upon the others. To the judicial department is confided the authority of construing and applying the laws; but in so doing it cannot directly invade the province of either of the other departments by prohibiting their action, though the acts of both, when performed, are in proper cases subject to its cognizance. The legality of the acts of both the legislative and executive departments can be tested and determined without

directly interfering with the functions of either in the first instance, and thus each will exercise the functions which the constitution contemplates without let or hindrance from the other. If this is not the rule to be observed then why not, when it is claimed that a law is unconstitutional, begin at the fountain head, and when an act is about to be passed by the general assembly, restrain that body from so doing, if it appears that it conflicts with the constitution, or mandamus the governor to exercise his constitutional prerogative to veto an act that was unconstitutional? The free exercise of executive functions by officials charged with the duty of administering the law must be recognized without regard to the dignity of the office which the official may hold, for it is just as necessary, in order that the government of the state may be properly carried on, that executive officials of comparatively inferior degree should be permitted to perform their governmental duties, as it is that the governor and other officials specifically named in the constitution as constituting the executive department, be permitted to perform theirs. In fact, when it is considered what duties are performed by officers charged with the administration of the law of the state of lesser dignity than these officials, it will probably be concluded that their acts are of more importance as a whole, in the conduct of governmental affairs, than the state officers proper. If it be conceded that executive governmental acts may be enjoined in the circumstances attempted by the corporations in this instance, then each executive official of the state, from governor down, might, at the behest of some one who claimed that the law or laws under which he was acting was unconstitutional, could be prohibited from performing his duties, and

thus the administrative functions of the government be entirely suspended. True, this is an extreme assumption, but not impossible, if the contention of the corporations should prevail. It serves, however, to demonstrate the necessity of a rigid adherence to the rule, that neither department of government can invade the province of the other. By adhering to this rule, each department will be permitted to perform its proper functions, without friction, and the constitutional authority of each fully exercised. In the enforcement of every law claimed to be unconstitutional, a stage will be reached when that question can be determined, and the rights of the citizens protected without interfering with governmental action.

*Petition for rehearing denied.*

MR. CHIEF JUSTICE CAMPBELL, not participating.

*(In the Proceedings in Contempt.)*

*Per Curiam.*—The two members of the court before whom were heard the contempt proceedings against the board of assessors and the motion of the respondents in the original proceeding to have its acts and doings in making and certifying assessments set aside, having been unable to agree upon the judgment to be entered therein, those matters were reserved for the consideration of the full bench, and were on the 7th day of December, 1901, reargued by counsel before the three members of the court. And afterwards, on the 16th day of December, 1901, the judgment of the court was pronounced holding the members of the board and the attorney general guilty of the contempt charged, but imposing no fine or imprisonment, and the motion to vacate was granted, the acts of the board in making

and certifying the assessments were set aside and held for naught, and the board directed to recall the same, in which judgment Chief Justice Campbell and Mr. Justice Gabbert concurred, Mr. Justice Steele dissenting. No opinion was filed by the court, Chief Justice Campbell concurring with Mr. Justice Gabbert in the conclusion reached by the latter in his opinion filed herein on the 29th day of October, 1901.

Mr. JUSTICE STEELE dissenting.

The Chief Justice having decided to concur in the opinion filed by Mr. Justice Gabbert, I deem it my duty to dissent from the judgment. I cannot agree with the majority of the court in any phase of this case. I have already said, in an opinion filed on the 28th of October, all that I care to say concerning the contempt charged against the attorney general and the state board of assessors. If, as stated in the oral opinion of the Chief Justice, they were guilty of the contempt charged against them, they should have been punished. It does not compel respect for the process of the court, nor vindicate its dignity, to find persons guilty of a flagrant and wilful contempt and then discharge them. That the judgment, so far as it shall be followed, will be a precedent for extending the summary proceeding of contempt into the field of conjecture and speculation as to what is ethically right, is sufficient reason for dissenting from that branch of the judgment. This case illustrates the difficulty of applying any such rule. In pronouncing the oral judgment, that, which in the statement of the case is only an obligation not to take the law into one's own hands after having applied to

a court for redress (for the record shows that the board completed its work and adjourned, on the 3d of October, before the court had construed the effect of the prohibition or cautioned the attorney general or the members of the board against certifying the assessments), and which, if an obligation at all, is an obligation imposed by the law, and not by this court, is spoken of first as an order of this court implied from taking jurisdiction, and afterwards as an order which this court had the right to make and did make; until finally the conclusion seems to be that this court had enjoined, instead of refusing to enjoin, the state board of assessors.

The other branch of the judgment, that assuming the power to declare null and void the assessment of property by the state board of assessors and the justice of so doing, I have not discussed further than to say that, in my opinion, this court has not that jurisdiction. The reasoning of the court in the written opinion seems to be, that an act which does not, in the case under consideration, inflict any legal injury is nevertheless theoretically "wrong" because, under other circumstances, an act in violation of an injunction might inflict a legal injury. That the court should therefore not look to see whether the act has really inflicted any such injury, but should enforce an absolute, unqualified, and unreasoning inhibition of such conduct. And that, in the enforcement of the inhibition, the fact that the act so determined to be wrong is the act of a board of public officers, proceeding within the strict line of its duty, and is an act that is required for the raising of public revenue; and the fact that the injunction was void because the judiciary is powerless, under the constitution, to interfere with the executive department, are

matters entirely foreign to the consideration of the court. In other words, that the case should not be determined in the light of the rights of the parties at the end of the litigation, but in the dark.

It is stated by Langdell and other text-writers that courts of equity, when unaided by statute, have no jurisdiction *in rem*, and can enforce their decrees only by execution against the body of the defendant. Langdell on Equity Pleading, § 43; Story, Equity Jurisprudence, § 891b.

Accordingly, Langdell says: "It is often said to have been one of the functions of the chancellor to set aside, for fraud or other sufficient cause, judgments, awards, accounts stated, conveyances, and contracts; but this is an incorrect use of language. If a judgment had been obtained by fraud, he would enjoin the judgment creditor from enforcing it; if an award or an account stated was infected with fraud, he would not permit it to be used against the defrauded party, either as a cause of action or as a defence to the original cause of action; if a conveyance of property was obtained by fraud, he would compel a reconveyance of it; if a written instrument purporting to constitute a contract was infected with fraud, he would, in a proper case, require it to be delivered up and cancelled; but he never did nor could set anything aside by his decree. Indeed, it may be stated broadly that a decree in chancery has not in itself (i. e,, independently of what may be done under it) any legal operation whatever." Langdell on Equity Pleading, § 43, note.

I am therefore of opinion that this court would have no jurisdiction to declare the acts of the state board of assessors null and void, even if it had held the injunction to be valid; and that its only power

would be to order the board to recall the assessments and that the members of the board stand committed until they complied with the order.   But, the board having made the assessments and transmitted certificates which had long before the decision been acted upon by various county officers, it was beyond the power of the board to recall the assessments, and the court thereupon assumed the power to annul the assessments by its simple fiat.

Under the constitution the people gave to this court supreme power, for there is no appeal from its judgments; but such power was given with the understanding that it would be exercised in subservience to the known and established maxims and principles of jurisprudence.

Again, even though it were within the jurisdiction of the court to annul the acts of public officers by its mere fiat, it is also essential that there be before the court a party having a legal right to demand that those acts be annulled.   Where a party to a suit has not been wronged, and can show no right that has been infringed, and the court renders judgment for him, it gratuitously bestows upon such litigant its judicial favor; and no judgment was ever sustained, or defended, upon the ground that courts have the power to bestow such favors.   I understand it to be now disclaimed that the judgment declaring the assessments void is in anywise predicated upon the power to punish for contempt; for, regarded as a punishment, it hurts the people of the state generally to exactly the same extent that it does the individual members of the board.   The judgment is therefore purely a civil judgment, founded upon a civil right; and the benefit conferred by the judgment, whether it is called a "*status*" or is designated

as "restoring things to the same plight and condi-. tion as they existed" at some other time, I take it, is a judicial gift nevertheless, unless at the time of the judgment the party bnefitted by it was legally entitled to demand that judgment.

The right to demand the judgment given the companies cannot be based in any degree or to any extent upon the violation of their void injunction. The case of *Kaehler v. Dobberpuhl*, 56 Wis. 497, decides that the punishment of a contempt is very different from the ordering of indemnity for the acts constituting the contempt. In that case a Mrs. Kaehler secured an injunction against Dobberpuhl, who was treasurer of the town of Cedarburg, to restrain him from collecting a certain tax which had been levied upon her real estate. Notwithstanding the injunction, Dobberpuhl proceeded to attempt to collect the tax, levied upon personal property of the plaintiff, offered the same for sale, and sold part of the property levied upon. She then replevied the property from the possession of Dobberpuhl. Upon proceedings for contempt, the circuit court adjudged that Dobberpuhl was guilty of contempt, imposed no fine or imprisonment as a punishment, but entered judgment that he pay to the plaintiff a "sufficient sum to indemnify her, and to satisfy her costs and expenses therein," which sum the court ascertained and fixed. Upon appeal from this judgment, the supreme court says: "The order of the court from which this appeal is taken was not made to vindicate the just authority of the court, and as a punishment for the contempt of such authority by the defendant, but to indemnify the plaintiff in the action for supposed losses and injuries which she claims to have sustained by reason of the

violation of the order of the court made to protect her rights. As we have held on appeal from the order of the court refusing to dissolve the injunctional order, by the violation of which the appellant claims to have been injured, that the circuit court should have dissolved the same, for the reason that the plaintiff's complaint and the other evidence in the case show conclusively that no sufficient cause had been shown for issuing the same, and that the same was improvidently issued, it is evident that the order from which the appeal is taken cannot be sustained. It would be clearly inequitable and unjust to indemnify the plaintiff for the violation of an injunction which never ought to have been granted to her, and for the obtaining of which she would be liable to the defendant in damages."

In the case just cited, the injunction was not void, but it was improvidently issued. The distinction is sometimes important. A party may be punished for violating an injunction, though improvidently issued. He cannot be punished for violating a void injunction; and in neither case can indemnity be awarded for its violation. An order that Dobberpuhl place the plaintiff in *statu quo*, by restoring to her the property that he had sold in violation of the injunction, would have been equally erroneous, and for the same reason,—it would have been an order for indemnity for the violation of the injunction; and the substitution of equitable indemnity for legal indemnity would not affect the result. Dobberpuhl was in contempt of court, as certainly as (by the judgment rendered here) the attorney general and the members of the board of assessors were in contempt; for it is no justification of the violation of an injunction that it was improvidently granted. The authority of the cir-

cuit court to indemnify the plaintiff in that case, appears to me much stronger than the authority of this court to order indemnity in this case,—at any rate, the real parties in interest were before the court, while in this case the people of the state were in no sense represented in the contempt proceedings.

Something additional to the violation of the injunction was certainly necessary before the court could award the railroads one cent as damages, or give them a judgment *in rem* as an indemnity or to restore them to a better position with respect to the assessment of their property than they then occupied; and that something additional must be in itself sufficient to warrant the judgment, because they had absolutely no right to preserve the *status* caused by or based upon their void injunction. This additional right, it is said, is found in the fact that the board applied to this court on the 25th of September for an alternative writ of prohibition against the court that had issued the injunction, and secured such writ; and, while the hands of the plaintiffs were thus tied and they were prevented from using the power of that court to maintain the void injunction, the board made and certified the assessments. This is said to be trifling with the court, to be a flagrant and willful contempt of court, and to be punishable as such. Suppose it is; it was not so punished. It is made the basis of a judgment awarding a substantial advantage to the companies in their efforts to prevent the assessment of their property for taxation; and however great the affront to this court may be considered, it conferred upon the companies no right of exemption from taxation, and conferred upon this court no jurisdiction to award the companies indemnity. I do not wish to be understood as conceding

that the act of the board was, under the circumstances, a trifling with the court. The injunction had been issued *ex parte*, by a judge who had already declared the revenue law unconstitutional; a motion for a change of venue had been filed by the attorney general, and after considerable delays it had been taken under advisement, and the attorney general was apparently powerless to secure any sort of action upon it. In that dilemma he procured the alternative writ of prohibition and proceeded at once to have the assessment made. It was an instance of "Government by Injunction," too oppressive and unjust to permit of the delay incident to its taking the ordinary course of litigation; and the course pursued was, in my opinion, justifiable. If the court chose to consider the certifying of the assessments as anticipating the action of the court upon the writ of prohibition, the correct course would have been to dismiss the writ of prohibition. When the court decided to entertain the writ upon the ground stated by Mr. Justice Gabbert, that "Behind the relators in the prohibition proceedings, the real parties in interest are the people of the state of Colorado, and their rights should not be curtailed or jeopardized, nor should they be refused a hearing because individuals (although their officials) have been guilty of a wrong," it waived that wrong, so far as it might be supposed to affect the rights of the people. I think it did right in waiving it; I therefore think it did wrong in afterwards resurrecting it as the basis of a judgment in favor of the companies.

Counsel for the companies were very persistent in their plea before the court insisting that the dignity of the court should be maintained, and that respect for its process should be compelled, and that this

court owed it to itself to see to it that its orders, were not trifled with, and that there was no other way to enforce obedience to its mandates; and yet, directly after the judgment of this court was pronounced, as we are informed by the briefs of counsel, the state board of assessors were served with process from the United States court, again enjoining ing the board from making these assessments,—which leads one to believe that their solicitude to maintain the diguity of the court, to protect its process, to vindicate its authority, was simply for the purpose of clearing the way for federal interference.

By this judgment the court has inflicted upon the people of the state, over the head of the state board of assessors, harsh and unusual punishment, simply because the state board of assessors, in violation of an implied obligation to await our decision with folded hands, obeyed the plain mandate of the statute; and has assumed a superiority which no court can possess, because it is strikingly apparent that if the district court may not by injunction interfere with the executive branch of the government, under the constitution, this court cannot do so for the mere purpose of thwarting a supposed abuse of its process,

An examination of the cases cited by Mr. Justice Gabbert as sustaining this judgment, will show that in each case the party who was restored to a *status* had a legal right to the *status*, upon the proposition that one in the peaceable possession of real estate to which he claims title is entitled to remain in possession until litigation concerning the title is concluded. and this without regard to the real merits of the litigation. And where such possession is interrupted under the cover and protection of a writ of injunction against the opposite party, the court may, and should,

direct such possession to be restored. Those cases are not authority for this judgment, for the reason that those cases give the party something that he was legally entitled to, while this judgment gives the companies something they were not legally entitled to, namely, freedom from assessment after the time the statute required the assessment to be made. The railroads having no right to prevent the assessment, no advantage was taken of them by the making of it; and they were entitled to no relief, legal or equitable.

No authority was cited by counsel supporting their right to this judgment, no principle was announced which, in my opinion, was applicable to this case; and yet the court has rendered a judgment which brings confusion to the affairs of state, basing it, as it seems to me, upon no applicable principle, nor the authority of any adjudicated case. I do not insist that appellate courts should be controlled by the judgments and opinions of other courts, nor that they should surrender their own well considered opinions to the opinions of other persons; but I do insist that where the effect of the judgment is to cause the community to suffer great loss, and where it disturbs and disorders governmental affairs, that the court should not render such judgment except it be based upon the authority of some adjudicated case or founded upon some well-recognized rule or principle of law.