[No. 5670.]

The People ex rel. Stidger, District Attorney, et al. v. Horan.

**Contempt—Appellate Practice—Parties.**

Where the claimant to an office brought suit by quo warranto in the district court against the incumbent of the office, and the judgment of the district court being against him he sued out a writ of error from the supreme court to review said judgment and pending the review of said judgment in the supreme court said claimant took possession of said office and proceeded to act as such officer, he was guilty of contempt of the supreme court.

*Original Proceedings in Contempt.*

Mr. Justice Maxwell delivered the opinion of the court.

By three petitions and affidavits filed herein it has been made to appear to the court that on or about July 20, September 1 and September 22, 1905, Rollins, claiming to be the coroner of the city and county of Denver, held three separate coroner's inquests in said city and county, and then and there discharged and performed all the acts and duties of coroner in holding such inquests, and by other acts set forth in the affidavits claims to be the coroner of the city and county of Denver.

In answer to a rule to show cause why he should not be adjudged guilty of contempt of this court and punished accordingly served upon Rollins July 27, 1905, he has filed answers to the several petitions and affidavits above mentioned, in which he admits the acts charged, asserts that the allegations of the affidavits are wholly insufficient to justify the making of any order upon him to show cause why he should

not be adjudged guilty of contempt, earnestly disclaims any intent or purpose to do any act or thing in contempt of this court or its orders and attempts to justify his action upon the theory that notwithstanding the judgment of the court below he is the coroner of the city and county of Denver by virtue, he alleges, of the decisions of this court in what are known as the county officers cases cited in the opinion in the main case.

For every wrong committed, the injured party has two remedies, which may be denominated a personal and a legal remedy; he may seek redress of the party who inflicted the wrong and thus obtain a remedy for the wrong committed, or he may pursue his legal remedy and by and through the intervention of the courts secure redress. Having adopted the latter remedy, he submits himself and his cause to the jurisdiction and determination of the courts, and impliedly binds himself to abide their decisions.

Having adopted his legal remedy, by implication he abandons his right to take the law into his own hands to enforce or attempt to enforce his personal remedy, and so long as his cause be pending in court he should not act contrary to the judgment of the court nor attempt to settle his controversy with his adversary by taking possession of the subject-matter of the controversy.

This rule should govern the conduct of both parties to a litigation and should prevail until the final determination of the matter in the appellate court, if the case should be there prosecuted, and is especially applicable to the party who institutes the proceedings in court or prosecutes in the appellate court.

As said by the present chief justice in *People v. District Court,* 29 Colo. 182: "Courts settle only liv-

ing issues or determine questions actually in dispute.''

If, after having perfected an appeal and submitted himself and cause to the appellate court, appellant takes the matter into his own hands and proceeds to act contrary to the judgment of the court below by taking possession of the matter in controversy which has been adjudged against him, there is no living issue or question actually in dispute for the appellate court to pass upon. To do so and continue to prosecute in the appellate court is a disrespect of the appellate court which convicts the plaintiff in error of at least a technical contempt of court and merits punishment.

No authorities directly in point have been cited and diligent search has discovered none.

In *People v. District Court, supra,* it was said: ''It may be that no authority can be found which can be said to be directly in point, because none have been cited wherein the facts are the same as those now under consideration. This can doubtless be explained upon the hypothesis that no litigant has ever had the temerity to assume the position that he had the right to take steps such as the relators have taken in the circumstances of this case.''

The foregoing language is pertinent to the case in hand, as also the following: ''The prime object in having judicial tribunals is to provide a method whereby all citizens, whoever they may be or whatever their standing, may have their disputes settled in an orderly and peaceful manner. Parties cannot take the law into their own hands and settle their rights according to their own notions of what is right and wrong. Courts are instituted for the purpose of settling controversies which disputants are unable to amicably arrange between themselves, and all must recognize this fact.''

In some respects *Hamill v. Bank,* 21 Colo. 173, is in point. There the matter in controversy was land; the judgment of the lower court was in favor of the bank; a writ of error from this court was made a supersedeas; the bank filed a motion to vacate the order granting the supersedeas. The court said:

"After this motion was submitted for determination, and while this court was engaged in its consideration, the respondent, disregarding the proceeding which it had instituted to relieve itself from the effect of the court's previous order, virtually took the law into its own hands and took possession of the property in controversy.

"Had the respondent at or before the time it thus took possession and before it was cited to show cause why it should not be punished for contempt been in a position to confess error and thus have the case remitted to the lower court, or to dismiss its motion to vacate the supersedeas, probably the conduct complained of might not be considered so censurable or flagrant; but for it, while prosecuting in court a remedy which, if granted, would enable it to get possession of the property under the protection of the judgment, deliberately to take possession while the court was considering its application for relief, without withdrawing its motion, is nothing less than a trifling with the court whose jurisdiction had been invoked. To suffer this to be done and permit a party to a suit to reap the benefits of such conduct or retain the advantages thus gained would be to confess the inability of courts to protect parties litigant while the litigation is pending; would be to allow the time of the court to be consumed by useless wranglings; would be to enable a suitor to experiment with the court, and when anticipating an adverse ruling set at naught and disregard such proceedings begun by him and take the law into his own hands and at the same

time impose upon the court the duty of continuing its examination of his case while he is in the enjoyment of the very thing the possession of which he has asked the court to give him.''

Upon the filing of the petitions and affidavits in this matter on the 25th day of July, A. D. 1905, the chief justice granted an order upon Rollins to show cause why he should not be punished for contempt by reason of the acts complained of.

This order was served upon Rollins personally July 27, 1905.

This order was equivalent to holding that there was probable contempt in the conduct of Rollins, and was notice to him of that fact.

Notwithstanding the foregoing order and in disregard thereof September 1, 1905, Rollins again held an inquest and on September 22, 1905, a like act was performed by him.

On the 21st of September, 1905, oral arguments in this court were had upon the several matters involved herein at which arguments Rollins was present and must have heard the statement made by his counsel at that time to the effect that if he (counsel for Rollins) had been in the jurisdiction of this court at the time the several acts complained of were committed that in all probability such acts would not have been committed.

This statement by counsel for Rollins was certainly notice to him that in the mind of his counsel there existed serious doubts at least of the propriety of the action complained of which he (counsel) would have undertaken to prevent had he been consulted in the matter.

It is true that he alleges in his answers that the board of county commissioners of the city and county of Denver and the district attorney advised him that

he was the coroner and, as he alleged, induced him to perform the acts complained of.

This, in our judgment, is no excuse or justification whatever.

He had submitted the determination of this question to this court and should have abided the judgment rendered by the court below until the final determination of the question could have been had in this court.

Whatever may be said as to the conduct of Rollins in holding the first inquest it cannot be doubted that under the facts as above stated in holding the second and third inquests he was guilty of a flagrant contempt of this court and should be punished therefor.

The judgment of this court is that for the acts committed the said Robert P. Rollins be adjudged guilty of contempt of this court; that he pay the costs of these contempt proceedings; that he do not recover his costs in this court in this cause, and that he be fined the sum of $50.

Decision *en banc.*