[No. 7981.]

# CITY AND COUNTY OF DENVER V. PITCHER.

---

[No. 7982.]

# THE COLORADO TAX COMMISSION V. PITCHER.

1. TAXATION—*The Purpose of the Provisions of the Constitution and Statute Regulating the Assessment of Property*, is to secure uniformity of taxation in each county of the state, for county purposes, and enable the commissioners in each county to determine the rate of tax necessary to meet the expenses of the county for the ensuing fiscal year. The provisions of the charter of the city and county of Denver, regulating the same matters, were enacted with a like purpose.

2. ———*Assessment Roll—When Complete*—The assessor may, at any time before the meeting of the county board of equalization, correct the assessment of any exempt property, the double assessment of the property of any tax-payer, or the assessment to a tax-payer of property of which he was not the owner at the time of the assessment, or any excessive assessment. He may also at any time before the return of the roll to the treasurer, supply clerical omissions and correct clerical errors in the roll, where it can be ascertained therefrom what was intended. He may supply such omissions as come to the notice of the county commissioners of his county, or, in Denver, those to which his attention is directed by the board of supervisors acting as a board of equalization. But where he has delivered to the auditor of state the abstract of the assessment roll required by Rev. Stat., sec. 5659, the roll is deemed complete, and thereafter the assessor may make only those changes which are expressly authorized by the statute.

A horizontal reduction in the assessment thereafter attempted, is without authority of law.

3. INJUNCTION—*Against Public Officer*—If a public officer is transcending his authority, and the resulting injury is not susceptible of reparation by proceedings at law, he may be restrained by injunction.

An injunction awarded to restrain an assessor from making an unlawful reduction in the assessment roll after its completion.

The provisions of Rev. Stat., sec. 5636, were held to be without application.

*Error to Denver District Court.*—Hon. GREELEY W. WHITFORD, Judge.

Mr. W. H. BRYANT, Mr. J. A. MARSH and Mr. PAUL KNOWLES, for the city and county of Denver.

Hon. FRED FARRAR, attorney general, Mr. FRANK C. WEST, assistant attorney general, Mr. NORTON MONTGOMERY, assistant attorney general, and Mr. PHILIP W. MOTHERSILL, for the Colorado tax commission.

Mr. FRED W. PARKS, attorney for defendant in error.

The defendant in error in each of these cases is the assessor of the city and county of Denver. He was engaged in making a horizontal reduction of ten per cent. on the valuations of property theretofore assessed, valued and listed by him for the year 1912, and extending the tax roll accordingly, when each of the plaintiffs in error brought an action to restrain him from so doing, and for such other, further and general relief as to the court should seem meet and proper in the premises. In the case of the city and county of Denver an *ex parte* restraining order was issued by the district court. The defendant filed a general and special demurrer in each suit, which was sustained, and the restraining order in the one case dissolved, and denied in the other. Thereupon, the plaintiffs in each case stood upon their respective complaints, and their actions were dismissed. The plaintiffs have brought their respective actions here for review on error, and severally ask for a restraining order against the assessor until the causes can be determined on their merits. Both parties appeared at the oral argument, and stipulated that the arguments on the application for the restraining orders asked for by the plaintiffs should be treated as arguments on the merits, and that the causes should stand submitted for final determination. As the causes present practically the same questions, they will be disposed of in one opinion.

On behalf of the city and county of Denver the complaint filed in the court below alleged, in substance: That the plaintiff is, and at all times mentioned, was, a municipal corporation, existing by virtue of the constitution and laws of the state of Colorado; that the defendant is, and at all times since June first, 1912, has been, the duly elected, qualified and acting assessor of the city and county of Denver, and has at all times since that date had, and now has, the actual possession, custody and control of the office of the assessor, and of all books, records, matters and things pertaining to that office; that, pursuant to law, and prior to August 1st, 1912, he made and caused to be made an assessment of the real and personal property within the city and county of Denver, and thereafter, and on or about the first Tuesday in August, 1912, met with the assessors of the different counties of the state, as provided by law, and compared his assessment with the assessments of the property in other counties of the state, and after such comparison, did not change or correct his assessment, as theretofore made; that he made an assessment roll of the property in the city and county of Denver, and on or about August 30th, 1912, produced an abstract of his assessment roll and subscribed and swore thereto, at the city of Boulder, in the presence of the auditor of state, which assessment roll showed a total valuation of the property within the city and county of Denver, subject to assessment, in the sum of $133,835,120.00; that after the authentication of such assessment roll, the auditor of state presented it to the state board of equalization, and to the Colorado tax commission, and thereafter, and prior to October 1st, 1912, the state board of equalization held a meeting for the purpose of adjusting and equalizing the valuation of real and personal property among the several counties of the state; that at this meeting no objection or complaint was made by the defendant, or any one, to the assessment made by the defendant, as verified before the auditor of state; that the Colorado tax commission, after the presentation to it of such assessment roll, held vari-

ous meetings for the purpose of examining the assessment of the real and personal property in the several counties, as made by the respective assessors, and certified the same to the state auditor, as provided by law; that neither the board of equalization nor the tax commission made any change or correction in the assessment made by the defendant, nor requested him to make any change or correction; that during the month of September, 1912, the board of supervisors of the city and county of Denver sat as a board of equalization; that at such meetings only two complaints upon petition were presented to the board of equalization with respect to the assessment made by defendant, which, after a hearing, were denied; that after the assessment roll for the year 1912 prepared by defendant was ready for the extension of taxes, he certified the total amount of property assessed within the limits of the city and county of Denver to the city council, showing the assessment so made by him, and also the assessment upon the property of telegraph, telephone and railroad companies, as certified to him by the tax commission, and that thereafter the council passed an ordinance, levying taxes on all taxable property within the limits of the city and county of Denver for the year 1912, which was duly and regularly passed, and signed and approved by the mayor; that at various times subsequent to the acceptance by the state board of equalization and Colorado tax commission of the assessment of real and personal property, made by defendant, and prior to December 20, 1912, the auditor of state and state treasurer issued warrants in payment of appropriations theretofore made by the general assembly, which warrants were based upon, and in anticipation of, the revenues to be derived from taxes collected upon property within the city and county of Denver, in accordance with the assessment made by the defendant; that on December 2, 1912, the mayor of the city and county of Denver presented to the council what is known as the "mayor's budget" for the year 1913, which budget was based upon the revenue to be derived from taxes collected in accordance with the assess-

ment so made by defendant, and the appropriation ordinance for the city and county of Denver during the year 1913; that on or about the 20th day of December, 1912, the defendant wrote to the auditor of state a letter, notifying him that, he desired to withdraw the assessment theretofore made by him, and that he had concluded to make a horizontal reduction of ten per cent. of all assessments under his jurisdiction, and notified the auditor that the assessed valuation of the property within the city and county of Denver for the year 1912 would be reduced ten per cent., and would stand at, approximately, $121,709,835.00; that at about the same time the defendant notified the mayor of the city and county of Denver of his proposed horizontal reduction on the assessment of property within his jurisdiction; that defendant has not delivered to the treasurer of the city and county of Denver the tax list and warrant under his hand and official seal, setting forth the assessment roll, with the taxes extended, and is proceeding to prepare a tax list and warrant, setting forth the valuation arrived at by a horizontal reduction of ten per cent. from the valuation and assessment made and certified by the defendant to the auditor of state and city council.

The complaint then charged that certifying and delivering to the treasurer the tax list and assessment roll and warrant prepared in accordance with the proposed horizontal reduction of assessments will subject the government of the city and county of Denver and that of the state to great embarrassment and difficulties; would create unutterable confusion in the administration of the financial department of these governments in the collection of taxes, and will cause delay in such collection, and that, as plaintiff is informed and believes, the assessor, through persons acting under his direction and control, has for some time past been working in making the horizontal reduction of ten per cent., and extending taxes based thereon, to the end that the tax list and warrant for the collection of taxes may be delivered by him to the treasurer of the city and county of Denver before any order of court.

commanding him to desist therefrom, can be applied for and secured.

The complaint on behalf of the Colorado tax commission, after alleging that it is created by the laws of the state, and is authorized to bring in its own name such suits as are necessary to enforce all laws of the state for the assessment, levying and collection of taxes, alleges substantially the matters set up in the complaint of the city and county of Denver.

To each of these complaints the defendant filed a special demurrer based upon the ground that the court was without jurisdiction of the subject matter of the action, in that the statutes provide a method of procedure for the hearing and trial of the questions set up in the complaint, and that no showing is made that the plaintiff has or has not availed itself of these statutory provisions; that the defendant is a public officer of the city and county of Denver and state of Colorado, and that the acts which the plaintiff is seeking to enjoin him from performing are acts required of him by the statutes of the state; and that the defendant is a constitutional. and state officer, performing duties of a *quasi* judicial nature, and the effect of the relief sought is to control him in the exercise of his official functions of a governmental and executory nature, and prevent him from exercising his discretion and judgment in the matter of assessment. The defendant also demurred upon the ground that the respective complaints did not state facts sufficient to constitute a cause of action.

In this court each plaintiff has filed what is denominated a petition for a temporary injunction or restraining order. To these petitions the defendant has answered, and also demurred, and the respective plaintiffs have demurred to the answer. We do not deem it necessary to give a synopsis of these pleadings, as the case must be determined on the pleadings presented to the trial court, and not on new pleadings filed here. In determining the questions presented, it is necessary to consider the following constitutional, statutory and charter provisions:

"There shall be elected in each county, at the same time at which members of the general assembly are elected, commencing in the year 1904 * * * one county assessor * * *." Art. XIV, sec. 8, constitution.

"All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal * * *." Art. X, sec. 3 *ibid*.

"On the first day of January in each year, or as soon thereafter as practicable, the assessor or his deputy shall call upon each inhabitant of his county, at the residence or place of business of such inhabitant, and deliver or leave for him or her the proper blanks for the return of the property of such inhabitant for assessment * * *. Every such inhabitant shall make and deliver to the assessor, between the first day of April and the 20th day of May in each year a full and correct schedule and description upon the blanks furnished as aforesaid of all the personal property of which such person was the owner on the first day of April of the current year * * *."

"In every such schedule and description the person making the same shall set down the full cash value of each item of the property therein mentioned for the guidance of the assessor. But the assessor shall determine for himself the value of each item after an examination of the schedule. * * ." Sec. 5573, R. S., 1908.

"At the hour of ten o'clock A. M. on the first Tuesday in August in each year, all the county assessors of this state shall meet at the capitol, and the auditor of state shall provide a place for them to meet, where they may have opportunity to compare their assessments before making affidavit thereto, and if, upon such comparison, and from other information obtainable, any assessor is satisfied that his valuation of any class of property is too high or too low, and that it does not

correctly set forth the proper value thereof, it shall be his duty to correct the same and thereafter make affidavit thereto, as is required by section 84 of this act. * * *." Section 5633 *ibid*.

"The assessor of each county of the state, except assessors of counties having more than one hundred thousand population, upon the completion of the assessment toll in each year, and prior to the endorsement of the tax list and warrant thereon, and on or before September first of each year, shall produce the abstract of the same in person, and not by deputy, to the auditor of state, and he shall there, in the presence of the auditor, subscribe his name to the following statement, which shall be appended to said assessment roll and constitute a part thereof, to-wit:

State of Colorado, County of ......................ss.

I, ...................., the assessor of ............ county, Colorado, do solemnly swear that in the above and foregoing assessment roll I have assessed all the taxable property in the county ................ for the current year and at the true value thereof.

..................

Subscribed and sworn to before me this ...... day of .........., A. D. 19....

..................
Auditor of State.

The assessor so subscribing the statement aforesaid shall thereupon be sworn to the truth of the facts set forth in said statement by the auditor. The auditor is authorized to administer the oath to said assessor, so subscribing said statement. * * * *." Sec. 5628 *ibid*.

Immediately after the assessment is completed, and the affidavit provided for in section 84 hereof (sec. 5628, *supra*,) is subscribed by the assessor and sworn to before the auditor of state, the county assessor shall make out an abstract thereof stating in detail the following facts with reference to the assessment in his county: (Then follow directions as to what

such details shall exhibit, which are to the effect that the assessor shall state in such abstract the amount, kind and value of the property possessed in his county, and provides:) The said abstract the county assessor shall make out in duplicate, and transmit one copy forthwith to the auditor of state. The state board of equalization is authorized to diminish or add to the above list and to require such different or further matters to be returned as it may deem advisable." Sec. 5659 *ibid.*

"The auditor of state, upon receipt of the abstract of assessment from any assessor, shall, without delay, examine the same, and if found to be correct, shall send the assessor a certificate stating the fact therein." Sec. 5662 *ibid.*

"The state board of equalization shall sit on the first Monday of October in each year, at the executive office, for the purpose of examining, adjusting and equalizing the assessments in the several counties of the state." Sec. 5764 *ibid.*

"If, in the opinion of the state board of equalization, upon satisfactory information submitted, any county assessor has omitted taxable property in his county from the abstract of assessment, or has assessed the property of his county palpably and manifestly below its true value, or has failed to verify his return, as herein required, and if said state board of equalization is likewise of the opinion that such delinquency operates as a fraud upon the state revenues, and that such revenues will be seriously impaired thereby, then and in such case the state board of equalization shall, upon reasonable notice to the assessor, and after summary hearing, require the delinquent assessor to forthwith make such corrections and additions to the said assessment as will make the same in accordance with the statutes * * * provided that in such case, before any such corrections or additions to said assessment shall be required, if desired by the assessor, he may have an appeal from the decision of the state board of equalization to the district court of the county of which he is the assessor. * * *." Sec. 5636 *ibid.*

"Immediately upon the receipt by the assessor of each county of the statement of changes in the assessment of his county made by the state board of equalization, he shall immediately make such correction of the assessment and assessment roll as may be necessary to carry out the directions of the state board of equalization." Sec. 5664 *ibid*.

"On or before the third Monday of October in each year the board shall complete the equalization, and the state auditor shall transmit to the clerk of each county a statement of the changes, if any, which have been made in the assessment, and the rate of tax which is to be levied and collected within his county, which shall not exceed the limit permitted by the constitution; * * * and the assessor of each county, in making up the tax list, shall compute and carry out in the proper column, a state tax at the rate aforesaid * * *." Sec. 5767 *ibid*.

"On the first day of the meeting of the county commissioners of each county as a board of equalization, the county assessor shall submit to said board the complete assessment of his county, together with a list of property returned to him. * * *." Sec. 5658 *ibid*.

"The county commissioners of each county shall constitute a board of equalization for the adjustment and equalization of the assessment among the several taxpayers of their respective counties. Said board shall hold two regular meetings in each year, at the office of the county clerk, at the county seat, at follows, viz.: Commencing on the first Tuesday in September and continuing not less than three, nor more than ten consecutive days, and on the third Tuesday of September, and continuing not less than two nor more then ten consecutive days. The board shall notify the assessor to supply any omissions in the assessment roll which may come to their notice. In case any material changes are made or directed by said board in the assessment of any person or persons at said first meeting, the county clerk shall, as soon as may be, after the close of said meeting, mail to each of

said persons, prepaying the postage thereon, a notice of such
change * * *. The board shall, at its second meeting,
sit to hear complaints only from those dissatisfied with said
changes, and to adjust the assessment so as to equalize the
same among the several taxpayers of the county * * *."
Sec. 5761 *ibid*.

"Except as an incident of equalization, the county board
of equalization shall have no power whatever to make any in-
crease or decrease in the total amount of the valuation of the
property of the county as set forth in the assessment roll.
The power of said board shall be to adjust and equalize the
valuation of the property set forth in the assessment roll, and
shall exercise no other power, and shall have no other author-
ity in the premises." Sec. 5638 *ibid*.

"If, in the opinion of any taxpayer, his property has
been twice assessed, or if the property exempt from taxation
has been assessed, or if personal property has been assessed
of which said person was not possessed at the time of the
assessment, or if any property has been assessed too high, or
if any property has been otherwise illegally assessed, such
person having such grievance may appear before the assessor
and make known to the assessor the facts in the premises, and
if in any particular the assessment complained of is erroneous
under the statutes, the assessor shall correct the same. * * *
The assessor shall continue such hearing from day to day and
time to time until all grievances shall be heard, but all hear-
ings shall be concluded before the day of the first meeting of
the county board of equalization." Sec. 5639 *ibid*.

"Omissions, errors or defects in form in any assessment
list or tax roll, when it can be ascertained therefrom what was
intended, may be supplied or corrected by the assessor at any
time before the return of the assessment roll to the treasurer,
or by the treasurer at any time before the receipt of the said
roll. * * *." Sec. 5722 *ibid*.

By section 124, *ibid*, the board of county commissioners is empowered to order the levying of taxes, as provided by law.

"On the first Monday of November in each year the board of county commissioners shall, by an order to be entered of record among their proceedings, levy the requisite tax for the year for school and other county purposes, as required by law, and the same may be levied at any time prior to the first Monday of November, if the statement of the rate of tax to be levied for state purposes has been received from the auditor. * * *." Sec. 5760 *ibid*.

"The fiscal year of each county in the state of Colorado shall commence on the first day of January in each year. The board of county commissioners of each county in this state shall, within the last quarter of each fiscal year, and at the same time that the annual levy of taxes is made, pass a resolution, to be termed the annual appropriation resolution, for the next fiscal year, in which said board shall appropriate such sum or sums of money as may be deemed necessary to defray all necessary expenses and liabilities of such county for the next fiscal year, and any such resolution shall specify the objects and purposes for which such appropriations are made, and the amount appropriated for each object or purpose. No further appropriation shall be made at any other time within such fiscal year, nor shall the total amount appropriated exceed the probable amount of revenue that will be collected during the fiscal year." Sec. 1215 *ibid*.

"As soon as practicable after the taxes are levied and not later than the first day of January annually, every county assessor shall deliver to the county treasurer the tax list and warrant under his hand and official seal, setting forth the assessment roll, with the taxes extended, containing in tabular form and alphabetical order the names of the persons and bodies in whose names property has been listed in his county, with the several species of property, and the value, and the total amount of taxes, and with the column of numbers and

value footed, and commanding the treasurer to collect said tax, and in a column to be provided for that purpose, he shall write the words, "By the assessor," when the list was made by himself." Sec. 5666 *ibid.*

In the case of the city, the following charter provisions of the city and county of Denver are to be considered:

 • "The assessor shall assess all taxable property within the city and county at the time, and in the manner prescribed by the General Laws of the state. * * *." Sec. 46.

"Except as otherwise herein provided, the officers who shall respectively perform the acts and duties required of county officers to be done by the constitution and General Laws in all cases not specifically provided for, so far as applicable, shall be as follows: * * * The board of supervisors shall act as a board of equalization, and perform the acts and duties required of a board of county commissioners when sitting as a board of equalization; the assessor, the acts and duties required of county assessor; * * *." Sec. 156.

By section 213 it is made the duty of the assessor, as soon as the assessment roll is ready in each year for the extension of taxes, in accordance with the General Law, to certify the total amount of property assessed within the limits of the city and county to the council, whereupon it is made the duty of the council to proceed to make the proper levy upon such valuation to meet the expenses of the municipality, and at the same time cause the total levies, including school, state and special levies, to be certified by the clerk to the assessor, who shall then extend the same upon the tax list of the current year.

By section 212 the council is directed to levy a tax not in excess of a specified rate for all general, state and county purposes, upon the total assessed valuation of the property within the state, and shall, also, in addition, levy the state and school district tax. "The fiscal year of the city and-

county shall commence on the first day of January and end on the last day of December of each year." Sec. 211.

By section 217 the mayor is required on or before the first day of December in each year, to present to the council a detailed statement of the amount necessary to defray the expenses of the city and county government and each department thereof, for the ensuing fiscal year, and also the amount to be raised by taxation to pay interest on bonded indebtedness and to provide for sinking funds.

By section 218 the council shall meet in joint session annually between the first and third Monday in December, and make a budget of the estimated amounts required to pay the expenses of conducting the public business of the city for the next ensuing fiscal year, based upon the mayor's budget, and for the other purposes required by the charter. After this estimate is made, section 219 requires that it shall be signed by the mayor and clerk, and filed in the office of the auditor, and that appropriations shall then be made by ordinance for the ensuing fiscal year, to the several purposes and departments therein named.

"The council shall not order the payment of money for any purpose whatsoever, nor shall any warrant or other evidence of indebtedness issue, in excess of the amount appropriated for the current year, and at the time of said order remaining unexpended in the appropriation of the particular class or department to which such expenditures belong; nor shall any liability or indebtedness incurred in any one fiscal year be a charge upon or paid out of the income or revenue of any other fiscal year." Sec. 246.

Mr. Justice Gabbert delivered the opinion of the court:

The main contention on the part of the respective plaintiffs in error is, that the defendant, in making the ten per cent. horizontal reduction, is committing an act which the statutory provisions prescribing his duties do not authorize, and that in so doing he is acting directly contrary to such provisions;

while on the part of the defendant the claim is made that he is performing an act of a governmental and executive nature, which the courts are without authority to control. Which of these contentions is correct turns upon the consideration of the constitutional, statutory and charter provisions above quoted, or to which reference has been made, and applicable to the facts stated in the complaints.

An assessor is a constitutional officer, but his duties are prescribed by statutes, which provide that he shall list and value property in his county for the purpose of taxation. The statutes evidently contemplate that this shall be completed before the first Tuesday in August of each year, as on that date all county assessors are required to meet at the state capitol for the purpose of comparing their assessments before making affidavit thereto, when, if any assessor is satisfied that the value of any class of property in his county is too high or too low, it is made his duty to correct the same. When such correction is made, if necessary, or if it is found a correction is not required, then the assessment roll is considered completed, for we find the next step required is that when the assessment roll is completed, each assessor, on or before the first day of September in each year, shall make an affidavit thereto before the state auditor, to the effect that in such roll he has assessed all the taxable property in his county at its true value. Immediately thereafter, each assessor is required to make in duplicate an abstract of the assessment in his county, showing the amount, kind and value of the property therein assessed, one copy of which shall forthwith be transmitted to the auditor of state. The state board of equalization is required to convene on the first Monday in October, in each year, for the purpose of examining, adjusting and equalizing the assessments in the several counties, which it does by an examination and comparison of the abstracts furnished by the county assessors. If, from such examination, or from any other source, the board is satisfied that taxable property in any county has been omitted, or property assessed too low, then the board, upon

reasonable notice to the delinquent assessor, may require him to forthwith make such corrections as will make the assessments in his county conform to the statutes, and unless the assessor so directed desires to appeal from such order, he shall at once make the corrections necessary to comply with the directions of the state board of equalization.

In its logical order, the next, and final, act of the state board of equalization consists in a compliance with the statute which requires this board, on or before the third Monday of October, in each year, to transmit to the clerk of each county a statement, which, among other things, shall state the rate of tax to be levied in each county for state purposes. This statute makes it the duty of the assessor of each county, in making up the tax list, to compute and carry out, in the proper column, a state tax at the rate certified by the board. The evident purpose of the statutory provisions so far considered is two-fold: First, to secure a uniform valuation of property in the state upon which to levy a tax for state purposes in compliance with the constitution, which requires that taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax; and next, to furnish the state authorities with the total assessed valuation of the taxable property in the state, so they may be advised as to what tax rate is necessary in order to raise sufficient revenue for state purposes.

In 1911 (Session Laws of that year, p. 612 *et seq.*), the general assembly passed an act entitled "Tax Commission," but, so far as advised from the briefs of counsel, no changes were made affecting any question involved in this case, although, the tax commission is now vested with some of the powers formerly possessed and exercised by the state board of equalization. They do not appear to be antagonistic to any of the sections which we have quoted, or to which we have referred, but are merely additional, or impose upon the commission some of the duties which the state board of equalization was theretofore required to perform; but, as stated, our

attention has not been directed to any of the provisions of the act which could in any manner affect the cases under consideration, except that by sections 13, 15 and 36 general supervision over the administration of assessing officers is conferred upon the commission, and to this end, the commission is empowered to enforce all laws for the assessment, levying and collecting of taxes, and may cause to be instituted such proceedings as will remedy improper or negligent administration of the tax laws of the state, and may compel compliance with the provisions of the act and with the orders of the commission by proceedings in mandamus, injunction, or other proper civil remedies.

We now come to the duties and functions of the assessor and county commissioners of each county, in connection with the assessment and the levy of taxes. The statute makes it the duty of the assessor to submit to the county commissioners of his county, on the first day they meet as a board of equalization, the complete assessment of his county. These officials constitute the county board of equalization for the purpose of equalizing and adjusting assessments among the taxpayers of their respective counties. They are required to hold two meetings each year, one commencing on the first Tuesday in September, and the other on the third Tuesday of the same month. By reference to the time when each assessor is required to transmit the auditor of state an abstract of the assessment in his county, it will be seen that the assessor is required to submit his assessment to the county commissioners of his county at substantially the same time. This board shall require the assessor to supply any omissions in the assessment roll which may come to their notice, but except as an incident of equalization, they have no authority to make any increase or decrease of the total valuation of the property of the county, as exhibited by the assessment roll furnished them by the assessor.

The fiscal year of each county commences on the first day of January of each year. It is the duty of the board of

county commissioners, and within the last quarter of each fiscal year, and at the same time the annual tax levy is made, to pass what is termed the annual appropriation resolution for the next fiscal year, by which there shall be appropriated such sums as may be deemed necessary to meet and defray the necessary expenses and liabilities of the county for the next fiscal year. This resolution shall specify the object for which the appropriations are made, the amount appropriated for each purpose, and further appropriations at any other time within such fiscal year are expressly inhibited. The board is authorized to levy taxes, and this authority may be exercised on the first Monday in November in each year by the levy of the requisite tax for school and other county purposes, or earlier, if the rate of tax to be levied for state purposes has been received from the auditor. The purpose of these provisions is to secure a uniformity of taxation in each county for county purposes, and also to enable the commissioners in each county to determine what rate of tax is necessary to meet the county expenses for the ensuing fiscal year. As soon as practicable after the taxes have been levied by the commissioners, and not later than January first, each year, it is made the duty of the assessor to extend the taxes on the assessment roll, and deliver the same to the county treasurer. By the charter provisions of the city and county of Denver, the board of supervisors are required to perform the acts and duties by boards of county commissioners, as a board of equalization, and the assessor, the acts and duties of a county assessor. It is also made the duty of the assessor, as soon as the assessment roll is ready in each year, for the extension of taxes, in accordance with the general law, to certify the total value of the property assessed within the limits of the city and county of Denver to the city council. The fiscal year of the city and county begins on the first day of January, and ends December 31st, each year. The mayor is required, on or before the first day of December, each year, to present to the city council a detailed statement of the amount necessary to defray the expenses of

the city and county government for the ensuing fiscal year; and
also, the amount necessary to raise, by taxation, with which to
pay interest on bonded indebtedness, and to provide for sink-
ing funds.   The council shall then meet in joint session be-
tween the first and third Mondays in December of each year,
and make a budget of the estimated amounts required to pay
the expenses of the city and county for the next ensuing fiscal
year, based upon the mayor's budget, and for other purposes.
required by the charter.   After this estimate is made, it is
signed by the mayor and clerk and filed in the office of the
auditor.   Appropriations shall then be made by ordinance for
the ensuing fiscal year, to the several purposes named.   The
necessary taxes are then levied to meet these appropria-
tions, including state, school and special levies, which are then
certified to the assessor, who is then required to extend the
same upon the tax roll, and deliver to the treasurer for col-
lection.   The purpose of these several provisions are the same
as stated in considering the duties and acts of commissioners.
and assessors, in assessing the property in counties and the
levy of taxes upon property therein.   In this connection, it
should be noted, that in the city and county of Denver the
total amount appropriated in any one year shall in no case ex-
ceed ninety per cent. of the anticipated revenues for that year,
as estimated upon the tax levied on the assessor's valuation,
and from other sources of revenue, and that the council is in-
hibited from ordering the payment of money for any purposes
in excess of the amount appropriated for the current year,
and that any liability incurred in any one fiscal year shall not
be a charge upon, or paid out of the income or revenue of, any
other fiscal year.

According to the averments of the respective complaints
the defendant made the assessment required by law; there-
after met with the assessors of the counties of the state; com-
pared his assessment with the assessments of property in other
counties, but did not change his assessment; that he prepared
an abstract of the assessment made by him, and delivered it to

the state auditor; that this abstract was delivered to the state board of equalization; that no changes were made therein by this body; that it was certified to the proper officials; that he certified the total assessment made by him to the city council; that the board of equalization of the city and county of Denver made no changes; and that thereafter the taxing authorities of that municipality levied a tax for the ensuing year based upon the valuation certified by the defendant. By the complaint on behalf of the tax commission, it is not expressly averred that the state authorities have levied a state tax; but as the time for doing so had expired when the commission brought its action, and as it is averred that state officials have issued warrants based upon and in anticipation of the revenue to be derived from taxes collected upon property of the city and county of Denver, it will be assumed that such tax was levied. According to the respective complaints, the reduction in the assessed valuation of property was proposed, and attempted, to be made after all these steps had been taken; so that the next question to consider, in connection with these facts, is, the changes in the assessment roll which an assessor is authorized to make, after delivering the abstract of assessment to the state auditor.

The statutes bearing on this subject require him to make such changes as the state board of equalization direct, to supply omissions in the assessment roll as may come to the notice of the board of county commissioners of his county, and necessarily perform the same act when directed by the board of supervisors of the city and county of Denver in their capacity as a board of equalization. He may also, on the application of a taxpayer whose property has been twice assessed, or whose property has been assessed which is exempt, or of which the taxpayer was not possessed when assessed, or has been assessed too high, correct such assessment; but these applications must be made and hearings thereon concluded before the first day of the meeting of the county board of equalization. He may also supply omissions and correct errors or defects in

the tax roll when it can be ascertained therefrom what was intended, at any time before the return of the assessment roll to the treasurer; but these corrections are merely clerical. This embraces all the changes he is authorized to make after the abstract has been delivered to the state auditor, so that it is evident he is not authorized by statute, either directly or indirectly, to make the horizontal reduction complained of; and hence, it must logically follow, that except in the particulars above mentioned, his roll is deemed complete upon delivery of the abstract of assessment to the state auditor. If the defendant assessor desired to make uniform reduction on the valuation of property in the city and county of Denver, the time for him to have done so was when he was vested with that power, which was after meeting with the county assessors, and before he delivered his abstract to the state auditor, for after such act, according to the statutes, his assessment roll was completed, and he could make no change thereafter, except as specifically authorized. That other changes than those mentioned are inhibited, is made manifest by the fact that a board of county commissioners (and in the city and county of Denver, the board which performs its functions) is expressly inhibited from making any change in the way of increasing or decreasing the total valuation of the property of a county, as exhibited by the assessment roll furnished by the assessor, except as an incident of equalization, and that any changes which the assessor is authorized to make, on the application of a taxpayer, must be made before the first meeting of the county board of equalization.

The wisdom of these provisions is evident. The assessors meet at the state capitol for the purpose of comparing assessments, so that there may be a uniform valuation of property of the same classes in the state. If such uniformity does not exist, they make the corrections which will bring about this result. The abstracts of assessment are then delivered to the state auditor. The state board of equalization may order changes if they find the different classes of property in the

state have not been uniformly assessed. Upon the total valuation as shown by the abstracts of assessment, a state tax is levied. Upon the total valuation of the assessments in each county, the county authorities levy taxes for county purposes; and should the assessors, after these levies are made, have the authority to make a horizontal reduction in the total assessed valuation of their respective counties, the revenues which the state and county authorities are required to provide by specific rate of taxation, would be reduced accordingly. The defendant has no authority to do this. If the taxes are too high for state purposes, or too high for the city and county of Denver, the fault lies with the taxing authorities, who, alone, are responsible to the people for this result, and he cannot correct these mistakes if they have been made, by doing an act which the statutes do not require him to do, but which they inhibit him from doing. We reiterate, that the time for him to have made the reduction he is now attempting to make, if justified at all, was when he met with the county assessors.

The next question to determine, is, whether a court can inhibit the defendant from making the proposed reduction. It is true, as contended by counsel for defendant, that the judicial department of the state has no power by an injunction to control an official in the exercise of his official functions of a governmental and executive nature—*People v. District Court,* 29 Colo. 182—but that is not this case. On the contrary, it clearly appears that defendant is violating the law relating to assessments by doing, or proposing to do, an act which the law inhibits him from doing, and with respect to which he has no authority or discretion, whatever. In other words,, he is attempting to undo a completed act. After an assessment has been completed, the assessor may not alter or change it unless he has express statutory authority to do so. *Cooley on Taxation,* 3rd Ed. 765. In applications for relief by injunction against the acts of public officials, the material question, generally speaking, is, whether they are acting within the scope of their authority, or whether they are transcending that au-

thority. If they are doing the latter, and the resulting injury is not susceptible of reparation by proceedings at law, they may be enjoined from the commission of such illegal act.— High on Injunctions, 4th Ed., secs. 1308-1309.

It is manifest that an action at law cannot give the plaintiffs adequate relief, or any relief whatever, and that an injunction to restrain the defendant is the only remedy which will prevent the wrongful acts of the defendant, and give plaintiffs the relief to which they are entitled, for the obvious reason that it is the duty of the defendant to extend the levy upon the assessment acted upon by the officials authorized to levy such tax, and deliver the tax roll, as thus completed, to the treasurer for collection. This is a duty imposed on the defendant by law with respect to which he has no discretion, and is, therefore, ministerial, and hence, a duty which a court can compel him to perform.—Cooley on Taxation, 3rd Ed., 1359.

Counsel for defendant contend that a statutory remedy is provided, and that, therefore, the actions at bar cannot be maintained. This contention is based on ssection 5636, R. S., which provides that if, in the opinion of the state board of equalization, any county assessor has assessed the property of his county manifestly below its true value, that then the board, upon reasonable notice to the delinquent assessor, may require him to make it conform with the statutes. In our opinion, this section does not apply to an assessor who is making a horizontal reduction in a completed assessment, but covers a case where the valuations of property assessed, as originally returned and from which the abstract of assessment is compiled, that is lodged with the state auditor, when it appears that such assessment does not, for any of the reasons enumerated in the section, comply with the statute.

It is also urged on behalf of defendant that there is no allegation of facts in either complaint from which it appears that irreparable injury will result to plaintiffs or either of them, by the act of the defendant in reducing the assessed val-

uation, in that it is not charged upon the part of either the state or city that they will not have sufficient revenue to pay the expenses and debts of the several departments of government. That question is in no sense involved, as the case turns entirely upon the proposition, that the proposed reduction by defendant is, *ipso facto,* illegal, for the reason that the law inhibits him from making it.

The judgments of the district court are reversed and the causes remanded, with directions to overrule the demurrers, and for such further proceedings as will harmonize with the views expressed in this opinion.

*Reversed and Remanded with directions.*

. Decision *en banc.* ·